**Jon E. YOUNT, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS and James L. Grace, Superintendent of SCI–Huntingdon, in his official capacity, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 2005.
Decided Nov. 17, 2005.

Jon E. Yount, petitioner, pro se.

Michael J. McGovern, Asst. Counsel, Camp Hill, respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Before this Court are the preliminary objections in the form of a demurrer filed by Respondents Pennsylvania Department of Corrections (DOC) and James L. Grace, Superintendent of the State Correctional Institution (SCI) at Huntingdon (the Superintendent), in his official capacity, (collectively referred to as Respondents), to the pro se amended petition for review filed under this Court's original jurisdiction by inmate Jon E. Yount (Petitioner), seeking injunctive relief in connection with a claim for retaliation by prison officials. We now overrule, in part, and sustain, in part.

From 1988 until November 30, 2004, Petitioner was incarcerated at SCI–Huntingdon. He is currently incarcerated at the SCI–Greene.

In March, 2004, Petitioner and twenty-two (22) other inmates incarcerated at

SCI–Huntingdon filed a complaint (the Yount Complaint) with the Pennsylvania Public Utility Commission (PUC), as a result of their dissatisfaction with the telephone system supplied by T–Netix, Inc. (T–Netix), to DOC institutions.[1] Thereafter, approximately a dozen other inmates, including inmate Preston Pfeifly, filed a similar complaint (the Pfeifly Complaint) with the PUC.

On September 28, 2004, an Administrative Law Judge (ALJ) from the PUC conducted a hearing by telephonic/video conference as part of the proceedings in the Yount Complaint, at which time a number of the complainants testified. The hearing was scheduled to resume at a later date, at which time the remaining complainants were to testify. A hearing relating to the Pfeifly Complaint was scheduled for sometime in October, 2004. In early October, DOC personnel informed complainants in both the Yount Complaint and Pfeifly Complaint that T–Netix intended to offer a settlement proposal and that further hearings had been postponed pending a possible settlement. On November 1, 2004, the complainants in the Yount Complaint submitted a settlement proposal to T–Netix.

On November 30, 2004, Petitioner was transferred to SCI–Greene. Inmate Pfeifly was transferred to State Correctional Institution–Rockview (SCI–Rockview).[2] As of January 16, 2005, having not received a settlement offer from T–Netix, Petitioner filed a motion to renew the PUC proceedings. Because of his transfer and separation from co-complainants,

Petitioner acted without consulting his co-complainants. Petitioner then filed a grievance with DOC on the basis that his transfer made it impossible for him to coordinate with his co-complainants. He alleged that his transfer was in retaliation for his participation in the complaint against T–Netix and had resulted in the denial of his constitutionally protected right to access the courts.

On January 31, 2005, the Grievance Coordinator at SCI–Huntingdon dismissed Petitioner's grievance based upon Petitioner's failure to file the grievance within fifteen (15) working days of his transfer to SCI–Greene. Petitioner appealed that decision on February 3, 2005. On March 21, 2005, the Superintendent affirmed the Grievance Coordinator's decision. Petitioner also appealed the decision to the Chief Grievance Coordinator, who also affirmed the decision. Thereafter, Petitioner filed a petition for review in this Court's original jurisdiction.

Petitioner alleges that his administrative appeal was timely and that his transfer was in retaliation for his initiation and maintenance of the coordinated challenge by inmates relating to the T–Netix telephone system in light of DOC's pecuniary interest in the operation, which Petitioner asserts is $7 million annually in rebates. Petitioner alleges that he and Pfeifly, the lead complainants, were both involuntarily transferred from SCI–Huntingdon, thereby separating them from their co-complainants, the effect of which was to deny them access to the requisite input and

1. Petitioner states in his brief that the T–Netix system is defective because it routinely, erroneously and prematurely disconnects inmate calls, thereby causing the inmate to be forced to redial and incur an additional hook-up-and-first-minute-fee which ranges from $2.27 to $4.35. Also, Petitioner states that T–Netix returns to DOC forty to sixty percent (40% to 60%) of the gross amount T–Netix charges to

inmates and their families, such that T–Netix and DOC share a financial interest in charging more fees to inmates.

2. DOC attached documentation to its brief which indicates that inmate Pfeifly was transferred to SCI–Rockview on June 8, 2004. (Exhibit "A" of Petitioner's brief.)

acquiescence of the co-complainants regarding disposition of the PUC complaints, including subsequent appeals. Therefore, DOC's actions interfered with and denied him access to the courts by separating him from his co-complainants. He also asserts that his transfer imposes familial hardships inasmuch as he is no longer housed in his "home area," denies him the ability to have contact with volunteers the Huntingdon chapter of the Pennsylvania Prison Society (PPS) regarding prison reform activities, and denies him the privilege of continuing his long-standing tenure with the Pennsylvania Lifers Association (PLA), a DOC-authorized inmate organization at SCI–Huntingdon that pursues improvements in conditions for prisoners. Petitioner alleges that neither he nor Pfeifly, both of whom he contends have excellent prison conduct records, were transferred pursuant to "misconduct" proceedings or other hearings. Moreover, DOC did not provide any legitimate penological objective to be attained by the transfer. Petitioner asserts that he was verbally informed by someone at SCI–Greene that his transfer was a result of an inappropriate relationship with a volunteer at SCI–Huntingdon, which Petitioner denies. Finally, Petitioner alleges that the Superintendent failed to respond to his administrative appeal within the time period required by DOC policy, thereby resulting in a violation of his due process rights.

In his request for relief, Petitioner requests an order declaring a wide variety of matters, including, but not limited to, declarations that his grievance was timely, that the transfer was retaliatory in nature and interfered with his access to courts, that the transfer imposed a familial hardship upon him, and that the transfer de-

nied him the ability to have contact with PPS volunteers and that it denied him the ability to participate in the PLA organization. Petitioner requests that he be transferred to SCI–Huntingdon for at least the remainder of the PUC matter and that Respondents be prohibited from engaging in further retaliatory acts, and he requested any other relief the Court deems just, including an award of the costs of litigation.

Respondents filed preliminarily objections to Petitioner's petition for review. First, Respondents argue that any cause of action related to an alleged denial of access to courts must fail because Petitioner did not identify any specific instance wherein he has actually been denied access to a court. Second, Respondents also argue that any cause of action related to free speech on the basis that Petitioner is being denied an ability to communicate with a prison volunteer of PPS or that it is now more difficult for his family to visit him must fail because inmates have no constitutional right to visitation. Third, Respondents argue that any cause of action related to Petitioner's allegation that his transfer has denied him the privilege of continuing his "long-standing tenure" with PLA must fail because inmates have no right to membership in the PLA. Finally, Respondents argue that any cause of action related to a violation of due process on the basis that the Superintendent failed to respond to the grievance appeal within the time period provided must fail because the Respondents' directives do not create liberty interests in inmates.[3] Respondents state that they will address issues relating to retaliation in future pleadings.

---

**3.** Respondents' preliminary objections also contained an objection on the basis that Petitioner failed to effect service on DOC in conformance with Pennsylvania Rule of Civil

Procedure 403. However, that particular objection was overruled by this Court's order, dated August 1, 2005. The remaining objections are now before this Court.

In response, Petitioner states that Respondents are strategically seeking to have the Court disassociate the underlying and controlling claim of retaliation from the other aspects of the action. Petitioner states that he clearly has a protected and absolute liberty interest in access to the courts and to petition the government to redress grievances. Petitioner acknowledges that he does not claim to have a free-standing liberty interest in visitation, prison-reform interaction with representatives of the PPS or membership in a supportive inmate organization. However, although Petitioner does not assert a liberty interest in those "privileges," he does claim that the degree of constitutionally protected liberty interest attached to each of those "privileges" is sufficient to guarantee protection against loss of those privileges because of Respondents' retaliation. In other words, Petitioner argues that government actions which, standing alone, do not violate the constitution may otherwise do so if motivated in substantial part by a desire to punish for exercise of a constitutional right.

 "To prevail in an action for injunction, a party must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Harding v. Stickman*, 823 A.2d 1110, 1111 (Pa. Cmwlth.2003). The Court may not grant relief where there exists an adequate remedy at law. *See Harding.*

 "In order to prevail on preliminary objections in the nature of a demurrer to a claim for injunctive relief, a court must find that the petition is clearly insufficient to establish a right to injunctive relief, and any doubt must be resolved in favor of overruling the demurrer." *Harding*, 823 A.2d at 1111. This Court has stated the following well-settled principle concerning its consideration of preliminary objections:

> When ruling upon preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded allegations of material fact as well as all reasonable inferences deducible therefrom. The Court is not required to accept as true any conclusions of law or expressions of opinion. A demurrer, which results in the dismissal of a suit, should be sustained only in cases that are free from and clear from doubt and only where it appears with certainty that the law permits no recovery under the allegations pleaded.

*Russell v. Donnelly*, 827 A.2d 535, 536 (Pa.Cmwlth.2003) (citing *Sweatt v. Department of Corrections*, 769 A.2d 574, 576–77 (Pa.Cmwlth.2001)).

 An inmate litigating a claim for retaliation against prison officials pursuant to 42 U.S.C. § 1983 need not prove that he had an independent liberty interest in the privilege he was denied. *Rauser v. Horn*, 241 F.3d 330 (3rd Cir.2001). Rather, as a threshold matter, the inmate must show that he engaged in constitutionally protected conduct which led to the alleged retaliation by prison officials. *Id.* In other words, the inmate must show that he suffered some adverse action at the hands of prison officials in retaliation for engaging in the protected conduct. *Id.* An inmate may satisfy the requirement of "adverse action" by demonstrating that the action taken by officials was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.*

 First, the pleadings are clear that, with the exception of a Count IV relating to the Superintendent's allegedly untimely response to his administrative appeal, Petitioner is attempting to assert claims for retaliatory transfer, which interfered with

the above-described privileges. The petition for review describes the harm caused to Petitioner as a result of the allegedly retaliatory transfer.

Instead of addressing any claim for retaliatory transfer, Respondents object to those claims on the basis that Petitioner failed to allege facts which, if proven, would support causes of action that Petitioner was denied right to access to the courts, a free-standing constitutionally protected right. Respondents further object on the basis that Petitioner failed to allege facts which, if proven, would support causes of action for a violation of any right to visitation by family members, right to communicate with PPS volunteers involving prison reform activities and right to association with members of PLA, because Petitioner does not have a constitutionally protected free-standing right to such privileges. Again, Respondent's preliminary

objections do not address any of Petitioner's claims to the extent that they are based upon retaliation. Indeed, Respondents, in their brief, state that they will address Petitioner's retaliation claims in future pleadings. (Respondents' brief at p. 7).

 Respondents' failure to address the claims as they relate to the allegedly retaliatory transfer must prove fatal to their preliminary objections.[4] Respondents' arguments are based upon a mischaracterization of the nature of Petitioner's claims as set forth in Counts I through III. Respondents, in the preliminary objections, do not even attempt to assert that Petitioner has failed to allege facts which, if supported, would establish a claim for retaliation. Therefore, we cannot conclude that the petition for review is clearly insuf-

4. We would agree with Respondents that, in the absence of allegations of a retaliatory transfer, Petitioner's petition for review also would fail to state a cause of action related to an alleged denial of access to courts because Petitioner did not identify any specific instance wherein he has actually been denied access to a court. In order to establish a claim that he has been denied access to the courts, an inmate must demonstrate an actual injury. *See Johnston v. Lehman*, 148 Pa. Cmwlth. 98, 609 A.2d 880 (1990). In other words, an inmate must demonstrate that he has actually been denied access to a court in a specific instance. *Id.* To the contrary, in the case at hand, Petitioner alleges that because a DOC policy, entitled "inmate mail and incoming publications policy," prohibits inmates from communicating with other inmates, he is unable to consult with his co-complainants. (*See* DC–ADM 803, attached to Respondents' brief as Exhibit "B".) His inability to consult with his co-complainants resulted in only his signature appearing on the motion to renew proceedings and interfered with his ability to discuss various issues relating to the case, including discovery and evidentiary matters. Petitioner did not allege that he was unable to pursue his own complaint or file documents with the PUC or this Court because of his

transfer. Petitioner did not allege that the action or any co-complainant was dismissed as a result of his transfer. Moreover, Petitioner did not even allege that he sought permission to communicate with his co-complaints and was denied by DOC. The DOC policy to which Petitioner refers provides an exception for instances where the facility manager provides written approval for the correspondence. (*See* DC–ADM 803, attached to Respondents' brief as Exhibit "B".) Under these circumstances alone, without any consideration of the allegedly retaliatory transfer, it cannot be said that Petitioner was improperly denied access to a court.

Moreover, in the absence of any consideration of the alleged retaliatory transfer, the petition for review would also fail to state any cause of action related to the denial of visitation, prison-reform interaction with members of PPS or membership in a supportive inmate organization such as PLA. Petitioner acknowledges that he does not have any free-standing liberty interest in visitation, prison-reform interaction with members of PPS or membership in a supportive inmate organization such as PLA that would form the basis for a cause of action in this matter in the absence of retaliatory actions by Respondents.

ficient to establish a right to injunctive relief based upon a claim of retaliation. Hence, Respondents' preliminary objections as they pertain to Counts I though III of the petition for review must be overruled.

■ The final preliminary objection filed by Respondents addresses Count IV of the petition for review, relating to the Superintendent's failure to respond to Petitioner's administrative appeal within the time period required by DOC policy. DOC takes the position that Petitioner was required to file a grievance within fifteen (15) days of his transfer. Petitioner's grievance was not filed within that time period. The Grievance Coordinator dismissed the grievance as untimely, and Petitioner appealed the dismissal to the Superintendent. Petitioner alleges that the Superintendent was required to address the appeal within fifteen (15) days, but did not address it until forty (40) days after Petitioner appealed to him. Based upon those circumstances, Petitioner alleges that he was held to a more stringent standard than Respondents because he was required to file within a specified time period and the Superintendent was not held to a similar standard. It is on that basis that Petitioner asserts that his due process rights were violated. Petitioner does not allege that the Superintendent's failure to timely address the administrative appeal was retaliatory in nature.

■ This Court has stated that a delay in rendering a decision does not impose an atypical hardship on a life inmate in relation to the ordinary incidents of prison life. *See Weaver v. Department of Corrections,* 829 A.2d 750 (Pa.Cmwlth.2003). Further, an inmate does not have a viable claim under 42 U.S.C. § 1983 based solely on a prison official's failure to adhere to a regulation, directive or policy statement. *See Elkin v. Fauver,* 969 F.2d 48 (3rd Cir.

1992), *cert. denied,* 506 U.S. 977, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992). In light of the above, we cannot conclude that the delay in this case constituted an actionable violation of Petitioner's due process rights. Hence, Respondents' preliminary objection relating to Count IV of the petition for review must be sustained.

Accordingly, Respondent's preliminary objections as they relate to Counts I through III of the amended petition for review must be overruled, and Respondents' preliminary objection relating to Count IV of the amended petition for review must be sustained.

### ORDER

AND NOW, this 17th day of November, 2005, the preliminary objections of the Pennsylvania Department of Corrections and James L. Grace, Superintendent of SCI–Huntingdon, in his official capacity (Respondents), are overruled, in part, and sustained, in part. Respondents' preliminary objections as they relate to Counts I through III of the amended petition for review are overruled, and Respondents' preliminary objection relating to Count IV of the amended petition for review is sustained.