**John D. WILSON, Appellant**

v.

**Jeff MARROW, Unknown Morrison, Unknown Moul, Unknown Pryal, Juanita Kramer, John Doe and Jane Doe.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2006.
Decided Feb. 13, 2007.

---

**14.** Based on our disposition of the case, we will not address the remainder of Petitioner's arguments.

John D. Wilson, petitioner, pro se.

Howard G. Hopkirk, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

John D. Wilson (Wilson), representing himself, appeals an order of the Dauphin County Common Pleas Court (trial court) that granted Appellees'[1] preliminary objections and dismissed his complaint for lack of subject matter jurisdiction. The trial court concluded Wilson's ostensible complaint for money damages in reality constituted an attempt to appeal the Pennsylvania Board of Probation and Parole's (Board) revocation decision. Consequently, the court held Wilson's exclusive remedy was an appeal to this Court. Alternatively, the trial court determined Wilson's complaint failed to state any cognizable claims against Appellees. For the following reasons, we affirm.

## I. Background

Wilson is currently incarcerated at SCI–Frackville. In his complaint, Wilson alleges the following facts. In August 2003, he reported to a York parole office and requested to be taken to SCI–Camp Hill to submit a revised home plan. Complaint at ¶ 7. On the same day, Wilson was taken to York County Prison. Id. at ¶ 8. While there, Appellee Marrow, a Board agent, visited Wilson and asked if he would agree to placement in an anger management program as an alternative to prison. Id. at ¶ 9. Wilson agreed on the condition the Board approve his new home plan. Id.

Thereafter, Appellee Marrow transported Wilson to Adappt House; however, he was placed in drug rehabilitation, not anger management therapy. Id. at ¶ 10. Approximately two weeks later, Adappt House discharged Wilson based on allegations he violated parole condition 7, failure to complete the program. Specifically, Adappt House alleged Wilson made threats to a male client and sexually stalked a female client. Id. at ¶ 11.

Thereafter, Wilson appeared at a Board preliminary hearing at which Appellee Moul, a Board hearing examiner, presided. Id. at ¶ 12. At the hearing, Appellee Kramer, a Board agent, read the above allegations against Wilson. Id. Wilson alleges Appellee Moul found probable cause for a violation solely upon a reading of the charges. Id.

Appellee Pryal presided over the subsequent revocation hearing. Id. at ¶ 13. Appellee Kramer again read the allegations against Wilson. Id. A witness from Adappt House testified Wilson made terroristic threats toward a Board agent and the agent's family. Id. Ultimately, the Board rendered a decision recommitting Wilson to serve 24 months backtime.[2] Id. at ¶ 14.

---

1. Appellees are employees of the Pennsylvania Board of Probation and Parole (Board). Appellees Jeff Marrow, Juanita M. Kramer and George Morrison are parole agents. Appellees William Moul and Robert Pryal are Board hearing examiners. Appellees John and Jane Doe are unidentified.

2. Wilson attached several Board documents as Exhibit A to his Objections to Appellees' Preliminary Objections (hereinafter "Wilson's Objections"), which are part of the certified record. Included are the Board's notice of charges, the revocation hearing transcript, and the revocation decision. These documents indicate that in June 2003, Wilson was paroled from a 4½ to 14 year sentence for drug and firearm offenses. Thereafter, the Board charged Wilson with the following technical parole violation:

> Condition # 7: You shall comply with Special Conditions imposed by the Board and with special conditions imposed by the parole supervision staff.
> You must abide by all the rules and regulations of the program. Any discharge or termination from this program other than successful completion will constitute a vio-

Wilson's complaint seeks monetary damages from Appellees for various federal constitutional violations, retaliation and other tortious conduct. Specifically, Wilson alleges violations of his Fifth, Sixth, Eighth and Fourteenth Amendment rights (Count I); defamation (Count II); official oppression (Count III); retaliation (Count IV); and negligence (Count V).

Appellees initially filed preliminary objections in the nature of a demurrer and jurisdictional challenge. They also filed supplemental objections asserting *res judicata*. Thereafter, the trial court granted Appellees' preliminary objection to subject matter jurisdiction. The court noted Wilson's complaint alleges the Board improperly revoked his parole and violated his constitutional rights in doing so. Thus, the trial court held Wilson's exclusive remedy is an appeal to this Court from the revocation decision. *Borsello v. Colleran*, 833 A.2d 1213 (Pa.Cmwlth.2003).

■ Alternatively, the trial court concluded Wilson's complaint fails to state any cognizable claims against Appellees. Wilson appeals.[3]

## II. Issues

Wilson contends the trial court erred by ruling it lacked subject matter jurisdiction over his 42 U.S.C. § 1983 complaint. He maintains he did not appeal the Board's decision; Wilson asserts he sued Appellees in their individual and official capacities. Wilson also alleges he properly averred claims of retaliation and constitutional deprivations.

Appellees counter that Wilson's claims are based entirely on his assertion the Board improperly revoked his parole. Therefore, Appellees contend, the trial court properly sustained their preliminary objection to subject matter jurisdiction. *Borsello*. Alternatively, Appellees argue that Wilson cannot collaterally appeal the Board's revocation decision under the

---

lation of your parole. If further treatment is recommended you will follow through with the recommendations.
Supporting Evidence: subject was unsuccessfully discharged from the ADAPPT program for inappropriate behavior. These [sic] consisted of making sexually inappropriate statement toward a female client, sexually stalking a female client and verbally threatening to assault another client.
Board's Notice of Charges (09/10/03).
The Board ultimately recommitted Wilson as a technical parole violator to serve 24 months backtime. Relying on Wilson's admission, the Board found Wilson violated parole condition 7 by failing to successfully complete the Adappt program. Id. The Board listed several aggravating factors: threats to agent and her family; serious anger problems; and danger to the community. Notice of Board's Decision (01/27/04).
We also note Wilson's April 16, 2004 appeal from the Board's March 10, 2004 final order was quashed as untimely. *See Wilson v. Pa. Bd. of Prob. & Parole*, (Pa.Cmwlth. No. 790 C.D.2004, filed April 20, 2004). In addition,

Wilson filed a habeas corpus petition in federal district court that was dismissed. *Wilson v. Pa. Bd. of Prob. & Parole*, (M.D. Pa., CA No. 3:04–1306 (Kosik, J.), filed December 17, 2004); *application for appeal denied*, (3d Cir. CA No. 05–1023, 05–1217). *See* Appellees' Supplemental Preliminary Objections, Exs. A, B, C, D.

3. Our review of a trial court's order sustaining preliminary objections is limited to determining whether the trial court erred as a matter of law or abused its discretion. *E. Lampeter Twp. v. County of Lancaster*, 696 A.2d 884 (Pa.Cmwlth.1987). In order for a trial court to sustain preliminary objections, it must appear with certainty the law will not allow recovery; any doubt must be resolved in favor of the non-moving party. Id. All well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true. Id. However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted. *Myers v. Ridge*, 712 A.2d 791 (Pa.Cmwlth.1998).

guise of tort claims. Appellees also assert the trial court correctly held Wilson failed to state any cognizable claims against them for defamation, official oppression, retaliation or negligence.

### III. Federal Claims

■ Citing *Stackhouse v. Pennsylvania State Police*, 574 Pa. 558, 832 A.2d 1004 (2003) and *Miles v. Beard*, 847 A.2d 161 (Pa.Cmwlth.2004), *pet. for allowance of appeal denied*, 582 Pa. 690, 870 A.2d 325 (2005), Wilson argues the trial court had subject matter jurisdiction over his 42 U.S.C. § 1983 claims for money damages. Wilson maintains he pled a valid Section 1983 action.[4] Specifically, Wilson avers Appellees, acting under color of state law, violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Wilson further avers Appellees retaliated against him for exercising his First Amendment right to freedom of speech.

#### A. Count I (Constitutional Torts)[5]

■ As an initial matter, we recognize common pleas courts have subject matter jurisdiction "over tort actions for money damages that are premised on either common law trespass or a civil action for deprivation of civil rights under 42 U.S.C.

§ 1983." *Miles*, 847 A.2d at 164. Further, where the core of the complaint is a tort action, original jurisdiction lies in common pleas court regardless of an ancillary request for declaratory relief. *Stackhouse.*

■ Nevertheless, after reviewing Wilson's complaint, we agree with the trial court that Wilson's Section 1983 claims against Appellees merely constitute an attempt to appeal the Board's revocation decision. Primarily, Wilson does not aver any injuries. In particular, he does not plead any physical, psychic or reputational injury arising from the alleged constitutional violations. Also, Wilson does not plead any damages. Thus, he avers no special, general, liquidated or unliquidated damages. Rather, the only loss he pleads is loss of freedom due to re-imprisonment. *See* Complaint at ¶ 37(E). Clearly, therefore, he fails to plead a basis for monetary recovery, and his sole objective is to litigate the loss of freedom occasioned by the revocation of his parole.

Consequently, we view Wilson's constitutional tort claims as a thinly disguised appeal of the Board's revocation decision. As a result, we hold the trial court properly determined it lacked subject matter jurisdiction over Count I of Wilson's complaint. *Borsello.*[6]

---

**4.** Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but it provides a remedy for the violation of rights created under the federal constitution or under federal

law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**5.** A constitutional tort is defined as

> A violation of one's constitutional rights by a government officer, redressable by a civil action filed directly against the officer. A constitutional tort committed under color of state law (such as a civil-rights violation) is actionable under 42 USCA § 1983....

Black's Law Dictionary 1526 (8th ed.2004).

**6.** *See also Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (Section 1983 actions are inappropriate means to collaterally attack the validity of convictions or sentences); *Williams v. Consovoy*, 453 F.3d 173 (3d Cir.2006) (state prisoner may not

■ Alternatively, we determine Count I fails to state a cause of action for the following reasons. First, Wilson avers Appellees violated his Fifth and Fourteenth Amendment due process rights by failing to give him notice of the charges against him. Complaint at ¶ 27. However, Wilson avers Appellee Kramer read the charges against him at the preliminary hearing, which preceded the revocation hearing. Id. at ¶¶ 11–12, 26. The charges specified that Wilson failed to complete the Adappt program and that he was discharged from the program for threatening a male client and sexually stalking a female client. Thus, Wilson's averments reveal he was given notice of the charges almost three months before the revocation hearing, and this claim of deprivation is negated by Wilson himself.

■ Second, Wilson avers Appellees violated his Sixth Amendment right to confront and cross-examine witnesses regarding the allegations he threatened and stalked individuals at Adappt House. Id. at ¶ 25. However, Wilson concedes he was represented by appointed counsel at the revocation hearing. Id. at ¶ 30. Moreover, the hearing transcript shows Wilson's counsel did cross-examine Adappt Clinical Director John Faunce, the Commonwealth's only witness at the revocation hearing. See Wilson's Objections, Ex. A (Revocation Hearing Transcript at 4–5). Wilson's own submissions, therefore, negate this claim of deprivation.[7]

■ Third, Wilson avers Appellees violated the Eighth Amendment prohibition against cruel and unusual punishment by imposing a new parole condition: condition 7. See Complaint at ¶ 17. However, parole is not punishment; rather, it is a release from total confinement to attempt rehabilitation. Thus, conditions of parole, primarily aimed at effecting, as a constructive alternative to imprisonment, rehabilitation and reintegration into society, do not constitute cruel and unusual punishment as a matter of law. See Commonwealth v. Walton, 483 Pa. 588, 397 A.2d 1179 (1979).

Moreover, Condition #7 (compliance with special conditions) is a general condition applicable to all parolees under Board jurisdiction, Wilson's averments to the contrary notwithstanding. See Timothy P. Wile, Pennsylvania Law of Probation and Parole 561 (2d ed. 2003) (Conditions Governing Parole/Reparole (PBPP–11)). Section 23 of the statute known as the Parole Act[8] empowers the Board to impose general conditions on all offenders under its jurisdiction and special conditions on individual offenders as it deems necessary. See also 37 Pa.Code § 63.5(a) (parolees shall comply with special conditions which are subsequently imposed by the parole agent). Wilson avers that upon release from prison the Board's agent required him to attend the Adappt program and that he did not complete the program. Complaint at ¶¶ 10, 11. Thus, Wilson fails

attack the revocation of his parole by means of a Section 1983 action where the parole board's decision was not rendered invalid).

7. Although Wilson also avers in his complaint that his counsel was ineffective, this is a matter properly raised in an appeal of the Board's decision, not a 42 U.S.C. § 1983 claim against Appellees. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). More importantly, the Board based its decision not on the testimony of the

Commonwealth's witness but on Wilson's admissions at the revocation hearing. See Wilson's Objections, Ex. A (Notice of Board Decision). Thus, Wilson's submissions show no causal connection between cross-examination of the Commonwealth's witness and loss of freedom.

8. Act of August 6, 1941, P.L. 861, as amended, 61 P.S. § 331.23.

to state a claim for cruel and unusual punishment based on condition 7, which governed his conduct after release from total confinement.

In view of the foregoing, we conclude Wilson's constitutional tort claims are unsupported by his submissions. Accordingly, we discern no error in the trial court's determination that Count I fails to state a cause of action.

### B. Count IV (Retaliation)

■ In Count IV, Wilson raises a claim for retaliation. As the trial court notes, retaliation claims against government officials are often included in civil rights actions under 42 U.S.C. § 1983. As a result, we conclude the trial court had subject matter jurisdiction over Wilson's retaliation claim. *Miles v. Beard.*

In Count IV, Wilson avers Appellee Marrow retaliated against him for requesting a change of his home plan and for complaining about being sent to York County Prison instead of SCI–Camp Hill. Complaint at ¶ 33. Specifically, Wilson avers he "agreed to be placed in an anger management program and was placed in a drug rehabilitation program out of retaliation." Id. at ¶ 34. Wilson's retaliation claim fails.

■ As a threshold matter, a state prison inmate must show he suffered some adverse action by prison officials in retaliation for engaging in constitutionally protected conduct. *Yount v. Pa. Dep't of Corr.,* 886 A.2d 1163 (Pa.Cmwlth.2005). "An inmate may satisfy the requirement of 'adverse action' by demonstrating that the action taken by officials was sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Id. at 1167. *See also Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (government action may be considered retaliatory if motivated in significant part by a desire to punish

someone for exercising a constitutional right).

■ The allegations of retaliatory conduct in Wilson's complaint are insufficient to support a retaliation claim. Wilson, relying on the legal doctrine of *res ipsa loquitur* (the act speaks for itself) alleges the mere act of being placed in a drug rehabilitation program instead of an anger management program is sufficient for a jury to infer retaliatory action. Complaint at ¶ 35. However, as the trial court correctly concluded, "being released from prison into a drug rehabilitation center rather than an anger management program is certainly not sufficiently adverse to support a retaliation claim; nor does it in any way tend to suggest retaliatory conduct." Tr. Ct. Op. at 5.

We also conclude Wilson's assignment to a drug rehabilitation program instead of an anger management program does not, by itself, establish a cognizable retaliation claim. Wilson has no constitutionally protected interest in being assigned to either a particular facility or program. *Cf. Tighe v. Wall,* 100 F.3d 41 (5th Cir.1996).

### IV. State Claims

### A. Count II (Defamation)

■ In Count II, Wilson asserts a claim for defamation based on Appellees' statements during the Board proceedings that he is a danger to society, a threat to the community and that he stalked and threatened patients at Adappt House. Complaint at ¶ 23. Inasmuch as Wilson's defamation claim sounds in trespass, the trial court had subject matter jurisdiction over Count II. *Stackhouse.*

■ Nonetheless, Wilson's defamation claim fails to state a cause of action for at least two reasons. First, defamation is an intentional tort, and Appellees, acting

within the scope of the duties, are protected by sovereign immunity from the imposition of liability for intentional torts. *Pickering v. Sacavage,* 164 Pa.Cmwlth. 117, 642 A.2d 555 (1994).

■ Second, statements made during judicial proceedings by a party, witness, counsel or judge, whether occurring in open court or in the pleadings, are absolutely privileged and thus cannot give rise to a defamation action. *Bochetto v. Gibson,* 580 Pa. 245, 860 A.2d 67 (2004). The judicial privilege also applies to pertinent and material statements made during the regular course of state agency proceedings. *Milliner v. Enck,* 709 A.2d 417 (Pa.Super.1998) (statements made during unemployment compensation proceeding are protected by judicial privilege). Here, Wilson's defamation claim arises from statements made during the Board's revocation hearing. Appellee Kramer read allegations that Wilson is dangerous, a threat to the community and that he stalked and threatened patients in the rehabilitation program. These allegations, made for purposes of Wilson's parole revocation, are protected by the judicial privilege. *Bochetto; Enck.*

## B. Counts III (Official Oppression) and V (Negligence)

■ Our review of Wilson's complaint indicates Count III (official oppression) [9] and Count V (negligence) also constitute nothing more than attempts to collaterally appeal the Board's revocation decision.

Although Wilson's Count III bears an "official oppression" heading, it essentially repeats averments that the Board denied him due process during the revocation proceeding. *See* Complaint at ¶¶ 24–32. Similarly, in Count V, Wilson alleges the Board negligently deprived him of his liberty in violation of his due process and equal protection rights. *See id.* at ¶¶ 36–37. Consequently, we hold the trial court lacked subject matter jurisdiction over Counts III and V, which constitute an attempted appeal of the Board's revocation decision. *Borsello.*

In sum, we agree with the trial court that it lacked jurisdiction over the constitutional tort claims and the official oppression and negligence claims, because these claims were in reality an appeal from a Board revocation decision. Under other circumstances, the trial court could have transferred these claims to this Court. 42 Pa.C.S. § 5103. However, Wilson's July 21, 2005 complaint, filed more than a year after the Board's March 10, 2004 final order, cannot be considered a timely appeal of the Board's revocation decision. Moreover, as the trial court noted, Wilson's April 16, 2004 appeal was already quashed as untimely. *See* Tr. Ct. Op. at 3, n. 1; *Wilson v. Pa. Bd. of Prob. & Parole,* (Pa.Cmwlth. No. 790 C.D.2004, filed April 20, 2004). Accordingly, the failure to transfer is proper since no appellate relief could be afforded by any part of the unified judicial system. *See Smock v. Com.,* 496 Pa. 204, 208–09, 436 A.2d 615, 617 (1981).

Further, we agree with the trial court that the claims within its jurisdiction were insufficiently stated. Based on the reasons stated above, we affirm the trial court's order.

## ORDER

AND NOW, this 13th day of February, 2007, for the reasons stated in the foregoing decision, the order of the Court of

---

9. As the trial court recognized, official oppression is a state criminal offense. *See* 18 Pa.C.S. § 5301. Pennsylvania's official oppression statute does not give rise to a private cause of action. *D'Errico v. DeFazio,* 763 A.2d 424 (Pa.Super.2000).

Common Pleas of Dauphin County is **AF-FIRMED.**