# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,  :
           Appellant  :
             :
          v.  :  No. 1024 C.D. 2015
             :  Submitted: August 14, 2015
John E. Wetzel, et al., S. Moore-Smeal;  :
D. Burns; J. Witheriter; G. Rozum;  :
D. Gehlmann; J. Mazurkiewicz;  :
A. Joseph; M. Hainsworth; J. Bianconi  :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
               HONORABLE MARY HANNAH LEAVITT, Judge[2]
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                        FILED: February 16, 2016

        Rasheed Nifas, *pro se*, appeals an order of the Somerset County Court of Common Pleas (trial court) that dismissed his complaint based on the preliminary objections of Secretary Wetzel, Executive Deputy Secretary Moore-Smeal, Superintendent Rozum, and other employees of the Pennsylvania Department of Corrections (Prison Officials). On appeal, Nifas contends that the trial court erred in sustaining Prison Officials' demurrer to his retaliation claim. For the reasons that follow, we reverse and remand.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

On June 20, 2014, Nifas filed a complaint under 42 U.S.C. §1983 alleging that Prison Officials unlawfully retaliated against him for exercising his constitutional right to free speech. The alleged retaliation consisted of returning Nifas to the Restricted Release List because he filed a grievance. An inmate on the Restricted Release List will not be considered for a transfer from the Restricted Housing Unit to the general prison population. In support, Nifas' complaint averred the following relevant facts.

In September of 2013, Nifas was informed that his "release from the RRL [Restricted Release List] confinement would be reviewe[d] ...." Complaint, ¶24. On January 16, 2014, Prison Officials informed Nifas that he had been removed from "RRL confinement status" but did not release him "to general population." Complaint, ¶26. Under the "alleged transition plan" Nifas was to "work in the restricted housing unit for 'free'" for several months. *Id.* On January 28, 2014, Nifas wrote to Prison Officials objecting to having to do "'free labor' for several months in the [Restricted Housing Unit] prior to being released" to the general population. Complaint, ¶27. On February 1, 2014, Nifas filed a grievance against Prison Officials "for holding plaintiff in the [Restricted Housing Unit] without a penological interest, and refusing to release the plaintiff after the DC-46 vote sheet was approved." Complaint, ¶28.[3] Further, the grievance alleged that the Department does not have a policy that requires "'free labor' prior to being removed or released from [the Restricted Release List]" and, thus, it lacked a penological interest in free labor. *Id.* The grievance also challenged the "made-up

---

[3] We glean from the context of Nifas' averment that a DC-46 vote sheet is the form memorializing Prison Officials' vote to release him from restricted housing.

'free labor' antiquated concepts prior to actual release to general population." Complaint, ¶31.

On March 20, 2014, Prison Officials reversed the decision to remove Nifas' name from the Restricted Release List even though refusing to do free labor is not a criterion for "highly restricted confinement." Complaint, ¶32. The complaint alleged that Defendant Burns falsified the rationale for Nifas' return to the Restricted Release List and falsified a "DC-46 vote sheet to continue to confine plaintiff under RRL status in Mar. 2014." *Id*. The complaint further alleged that Prison Officials retaliated against Nifas for filing his February 1, 2014, grievance, which is conduct protected by the First Amendment. Complaint, ¶34.

The complaint seeks a declaratory judgment that Nifas was denied his right of free speech; that requiring inmates to provide free labor is unconstitutional; compensatory damages in the amount of $25,000 per defendant; punitive damages in the amount of $25,000 per defendant; and nominal damages. In response, Prison Officials filed preliminary objections in the nature of a demurrer, asserting that the complaint failed to state a legally cognizable claim.

On September 2, 2014, the trial court conducted a telephone conference on the Commonwealth's demurrer. Counsel for Prison Officials defended the requirement that Nifas work for free, stating:

> [Nifas] was asked to participate in the condition prior to his release to establish that he was no longer a threat and that he could be released in general population.
>
> [Prison Officials] don't want to release someone prematurely and then have someone injured or attacked, or something like that. So there's supposed to be a gradual process.
>
> As I understand it, the stepdown program was to involve him being a block worker for two hours a day for a period of time --

it looks like 60 days -- and then he would be -- then there would be additional conditions after that.

But the thing is that before [Prison Officials] want to release [Nifas], they want to establish that he is cooperative and will follow orders and things like that.

Notes of Conference, September 2, 2014, at 13. Counsel further explained:

[Nifas] has numerous misconducts, I believe 45 misconducts, since confinement in the [Department of Corrections], and he has -- [Prison Officials] also indicate he has displayed a poor attitude towards staff.

So this is one way of establishing that [Nifas] could be compliant with orders if he was released in general population.

*Id*. at 14.

In response, Nifas stated:

Your, Honor, I've been incarcerated for 24 years straight, and I never received a misconduct at this institution no matter what he said. And, Your Honor, it's -- if -- *he's arguing something that has absolutely nothing at all that I stated in my complaint* or my response to the pleadings and in support of my responses. Did not. Nothing at all. Absolutely nothing at all.

In fact, it's not about the attitude, because [Prison Officials] put two and three people in one cage that's on administrative custody and will function around other prisoners and the staff. And it's the reason why they first made a recommendation to remove me, because there was no penological interest or threat towards inmates or staff. You see?

And then it wasn't 60 days, Your Honor. It was six months. They actually wanted me to work in the Restricted Housing Unit for six months. And no -- with no pay. And I've been in the hole almost seven and a half years. It's ludicrous.

And then if they flood their cells, they throw urine, some individuals, and – there's some mentally -- really, really need some help individuals that has defecation and so forth -- and

4

they wanted me to go and clean this when they already have workers that come from population that -- you know, ready to go home. They're like six months and so forth. They have a unit in population for them. And they come and they serve the trays and clean and sweep and so forth, and they get paid like 42 cents an hour, which is one of the highest pays. And they actually wanted me to go -- they could wake me up in the middle of the night, someone flood[ed] the floor -- actually get up out of bed, like -- and go sweep and mop, and do things like this while the one's [sic] who actually get paid are on the unit and don't come over to restricted housing.

*Id.* at 14-16 (emphasis added).

At the conclusion of Nifas' statement, the trial court stated that it would take Prison Officials' motion to dismiss under advisement.

On October 30, 2014, the trial court issued an order sustaining Prison Officials' preliminary objections and dismissing Nifas' complaint. In an accompanying memorandum opinion, the trial court framed the retaliation claim in the complaint as follows:

> [Nifas] alleges that he was being required to work for free in the Restricted Housing Unit [RHU] and upon his refusal to do so he filed a grievance. Following the filing of a grievance his removal from the RRL was withdrawn. He claims that the action taken by [Prison Officials] was in retaliation for his grievance.

Trial court op. at 1-2. The trial court then offered the following rationale for dismissing Nifas' complaint:

> *The facts*, however, *indicate that the action taken by [Prison Officials] was a reversal of the decision to remove [Nifas] from the RRL because he would not comply with the program conditions* established, including that [Nifas] work in the RHU without pay. As previously indicated, [Nifas] is not entitled to be paid for prison work or work in general. The complaint at Paragraph 27 indicates that [Nifas] wrote to the defendant,

5

Jeffrey Witheriter, Regional Assistant of the Department of Corrections, complaining about the requirement "to do 'free labor' for several months in the RHU, prior to being released when absolutely no penological interest exists for [Nifas] to be confined in the RHU." Complaint ¶27.[4] Accordingly, [Nifas] indicated his unwillingness to comply with the conditions established for his removal from the RRL before the filing of his grievance on February 1, 2014. *[Nifas'] free-speech in the filing of grievances has not been deprived by the action taken by [Prison Officials], but rather [Prison Officials'] action was taken before the filing of a grievance based on his refusal to comply with the conditions established.* An inmate should not be in a position to dictate the terms of his release from the RRL, but rather should be deemed to be fully compliant with those conditions in order to achieve a return to the general population. It is not the position of the court to second-guess the penological methods established by the Department of Corrections in the handling of its inmates.

Trial court op. at 2-3 (emphasis added). Nifas appealed to this Court.

On appeal,[5] Nifas contends that the trial court erred because his complaint stated a claim for retaliation. Prison Officials disagree. They argue that the complaint did not plead facts sufficient to show a causal link between the protected activity, *i.e.*, the filing of a grievance, and the termination of Nifas' transition out of the Restricted Housing Unit by returning him to the Restricted

---

[4] The complaint alleges that this letter was written on January 18, 2014.

[5] A preliminary objection in the nature of a demurrer must be sustained where it is clear and free from doubt that the law will not permit recovery under the facts alleged. *Petsinger v. Department of Labor and Industry*, 988 A.2d 748, 753 n.1 (Pa. Cmwlth. 2010). In ruling on preliminary objections, this Court accepts as true all "well-pleaded material facts and any inferences reasonably deduced therefrom." *Richardson v. Pennsylvania Department of Corrections*, 991 A.2d 394, 395 (Pa. Cmwlth. 2010).

6

Release List. They quote, at length, from Nifas' grievance,[6] which is not in evidence.

Pennsylvania requires a fact-pleading, which means the pleading must state the "facts essential to support the claim." *Richardson v. Wetzel*, 74 A.3d 353, 356-57 (Pa. Cmwlth. 2013) (quoting *Sevin v. Kelshaw*, 611 A.2d 1232, 1235 (Pa. Super. 1992)). When reviewing preliminary objections "[a]ll well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true." *Richardson,* 74 A.3d at 356 (quoting *Wilson v. Marrow*, 917 A.2d 357, 361 n.3 (Pa. Cmwlth. 2007)).[7]

---

[6] In their brief, Prison Officials offer reasons why Nifas' transition to the general population requires free labor. These reasons are nowhere stated in the complaint. Prison Officials misunderstand the scope of this Court's review at this phase of the proceeding. The trial court had to rule on whether Nifas had sufficiently pled a claim of retaliation in his complaint, not whether Prison Officials' actions were proper. At this point, no evidence has been offered by either party. Our review is limited to considering only those well-pled facts contained in Nifas' complaint.

[7] *Richardson* established that a claim for retaliation requires an inmate to show that: (1) he engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal. *Richardson*, 74 A.3d at 357. Furthermore,

> [a] claim of retaliation is insufficiently pled where the prisoner merely alleges that he was charged and found guilty of misconduct. Otherwise, under the guise of claiming retaliation, we would turn a case filed in our original jurisdiction into a thinly disguised impermissible appeal of the decision on the misconduct conviction.

*Id*. (quoting *Brown v. Blaine*, 833 A.2d 1166, 1171 n.11 (Pa. Cmwlth. 2003)).

*Richardson* is of limited relevance here. In *Richardson*, the inmate filed a retaliation action in order to lodge a collateral attack on his adjudicated misconduct. Nifas has not been convicted of misconduct. There has been no hearing on his return to the Restricted Release List and, thus, there is no judgment to attack collaterally.

The complaint states, "[a]pproximately seventeen days after the Grievance coordinator signed the grievance received, [Prison Officials] scheduled another PRC hearing on Feb. 20, 2014, because of [Nifas'] grievance against [Prison Officials] and submitted a DC-46 vote sheet with falsified rationales to withdraw the previous support." Complaint, ¶34(3). The complaint alleges that Prison Officials decided to reinstate his placement on the Restricted Release List, *i.e.*, without an avenue to enter the general population, because Nifas filed a grievance. *Id.* The complaint also alleges that "[a]bsolutely no PA Dep't of Correction policy exists that coerce[s] 'free labor' prior to being removed or released from [Restricted Housing Unit] confinement." Complaint, ¶28. In sum, the complaint alleges that Prison Officials did not have a legitimate penological interest in keeping him on the Restricted Release List and did so because of his grievance.

The trial court found that "*the facts ... indicate* that the action taken by [Prison Officials] was a reversal of the decision to remove [Nifas] from the RRL because he would not comply with the program conditions established." Trial court op. at 2-3 (emphasis added). The trial court went on to hold that the complaint did not state a claim for retaliation because Prison Officials' "action was taken *before* the filing of a grievance based on his refusal to comply with the conditions established." Trial court op. at 3 (emphasis added). The "facts" referred to by the trial court are not stated in the complaint and have yet to be established. Notably, one of the attachments to the complaint is a memo from Dan Caro to Nifas, which states that "[y]our RRL status was continued in March 2014," which was after he filed the grievance on February 1, 2014. Memorandum

8

Exhibit, 4/22/14.[8] The trial court's factual finding on the sequence of events is contrary to the facts averred in the complaint.

The complaint alleges that Prison Officials' actions were based on lies, not Nifas' refusal to participate in the transition plan. The trial court stated that Nifas "indicated" his unwillingness to comply with the transition plan by complaining about the free labor requirement. Notably, Nifas' pleading does not state that he refused to comply with the transition plan. Further, non-compliance cannot be inferred from the pleading's averment that Nifas objected to doing free labor.

Nifas' claim is that he was returned to the Restricted Release List in retaliation for filing a grievance. In dismissing the complaint, the trial court found, as fact, that Nifas' return to the Restricted Release List took place *before* he filed

---

[8] This memo is not evidence. It is referred to because it underscores the point that the complaint does not allege that the decision of Prison Officials to return Nifas to the Restricted Release List took place before the grievance was filed but, rather, afterward.

The Pennsylvania Rules of Civil Procedure require that where a "claim or defense is based upon a writing, the pleader shall attach a copy of the writing ...." Pa. R.C.P. No. 1019(i). Generally, this rule applies where the writing at issue is a contract, in which case the contract must be attached to the complaint. *See, e.g., Jost v. Phoenixville Area School District*, 406 A.2d 1133 (Pa. Super. 1979). Documents that may have evidentiary value need not be attached, and "it is improper to attach them." GOODRICH AMRAM 2d, §1019(i):5. Accordingly, unlike the dissent, we do not use the unnecessary exhibits attached to Nifas' complaint but, rather, the facts as they appear in the pleading.

Where there is an inconsistency between a factual averment in a pleading and a document attached thereto, the document will prevail or the court may require a more specific or accurate pleading. *Id.* at 1019(i):5. This maxim has been applied where the writing, a contract, is required to be attached to the pleading. *See, e.g., Cohen v. Carol*, 35 A.2d 92, 93 (Pa. Super. 1943). Nifas attached exhibits to show that he had exhausted his administrative remedies, not to establish anything stated in these exhibits as a matter of fact. The exhibits may or may not have evidentiary value. It is too early in the proceeding to say. The exhibits do not contradict his averment of retaliation, *i.e.*, that his grievance resulted in his return to the Restricted Release List.

9

the grievance. That fact is contrary to the allegations in the complaint and needs to be established in a record, as do Prison Officials' reasons for returning Nifas to the Restricted Release List.

The "argument" of Prison Officials at the conference went far afield of their demurrer. It began, for example, with a recitation of the many misconducts that had been lodged against Nifas. Counsel then went on to offer a defense of Prison Officials' transition plan. These points should be presented in an answer. Prison Officials seek to dispose of the complaint without a protracted proceeding. This can be done with a motion for judgment on the pleadings or a motion for summary judgment. There is no other way to develop a factual record as the basis for a summary disposition of a complaint.

In sum, the trial court erred in dismissing the complaint on the basis of "facts," which were not in the pleading and at points contrary to the averments in the pleading. Our Supreme Court has held that a demurrer must be free of doubt to be sustained:

> [T]he question presented in a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*MacElree v. Pennsylvania Newspapers, Inc.*, 674 A.2d 1050, 1056 (Pa. 1996) (quotations omitted). The trial court's exercise in fact finding was simply not consistent with the demurrer standard.

For the foregoing reasons, the order of the trial court is reversed and this matter remanded for Prison Officials to file an answer to Nifas' complaint.

_____
MARY HANNAH LEAVITT, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                                    :
                         Appellant               :
                                                 :
            v.                                   :    No. 1024 C.D. 2015
                                                 :
John E. Wetzel, et al., S. Moore-Smeal;          :
D. Burns; J. Witheriter; G. Rozum;               :
D. Gehlmann; J. Mazurkiewicz;                    :
A. Joseph; M. Hainsworth; J. Bianconi            :

# **O R D E R**

AND NOW, this 16th day of February, 2016, the order of the Somerset County Court of Common Pleas dated October 30, 2014, in the above-captioned matter is hereby REVERSED and this matter is REMANDED for Appellees to file an answer.

Jurisdiction is relinquished.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                           :
                        Appellant        :
                                         :
            v.                           :
                                         :
John E. Wetzel, et al., S. Moore-Smeal;  :
D. Burns; J. Witheriter; G. Rozum;       :
D. Gehlmann; J. Mazurkiewicz;            :     No. 1024 C.D. 2015
A. Joseph; M. Hainsworth; J. Bianconi    :     Submitted: August 14, 2015


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

DISSENTING OPINION BY
JUDGE COVEY                              FILED: February 16, 2016


            I respectfully dissent from the Majority's decision reversing the
Somerset County Common Pleas Court's (trial court) October 30, 2014 order
sustaining the preliminary objections filed by the Department of Corrections (DOC)
Secretary John E. Wetzel, DOC Executive Deputy Secretary Shirley Moore-Smeal,
and DOC employees Daniel Burns, Jeffrey Witheriter (Witheriter), Gerald Rozum
(Rozum), Daniel Gehlmann (Gehlmann), Joseph Mazurkiewicz (Mazurkiewicz),
Allen Joseph (Joseph), Melissa Hainsworth and Joseph Bianconi (collectively, Prison
Officials), dismissing Rasheed Nifas' (Nifas) complaint with prejudice, and
remanding the matter to the trial court for Prison Officials to file an answer.

            The issue before this Court is whether Nifas sufficiently pled his
retaliation claim. In his complaint, Nifas alleged that although he was promised
removal from the Restricted Release List (RRL) it never occurred because he filed a

grievance against Prison Officials for making him work for free.  In their preliminary objections, Prison Officials asserted that the complaint did not plead facts sufficient to show a causal link between the protected activity of filing a grievance, and the termination of Nifas' transition from the restricted housing unit (RHU) to general population.

> Initially,
>
> [t]he Facility Manager/designee may request that an inmate be placed on the [RRL] when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern.  The Secretary/designee must approve placing the inmate in this status.

Complaint Ex. 11, DC-ADM 802 Procedures Manual at 1-2.  Further,

> [a]n inmate identified on the RRL may not be released from a[n RHU] . . . without the written approval of the Secretary/designee.
>
> The PRC [Program Review Committee] may make a recommendation to the Facility Manager/designee if it is believed that an inmate on the RRL could be safely released to general population or to a Specialized Housing Unit.

*Id.* at 4-2.  Nifas contends that such recommendation was made, but then rescinded because he filed a grievance.

> The Majority holds that
>
> Prison Officials seek to dispose of the complaint without a protracted proceeding.  This can be done with a motion for judgment on the pleadings or a motion for summary judgment.  There is no other way to develop a factual record as the basis for a summary disposition of a complaint.

Majority Op. at 9.  However, Prison Officials have filed preliminary objections in the nature of a demurrer.

'[T]he question presented in a demurrer is whether, **on the facts averred, the law indicates with certainty that no recovery is possible**.  In reviewing a lower court's decision to grant a demurrer, our Court's standard of review is de novo.'  *Stilp v. Gen*[.] *Assembly, . . .* 974 A.2d 491, 494 ([Pa.] 2009) (citations omitted).

In reviewing preliminary objections, '[**a**]**ll well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true**.  However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted.'  *Wilson v. Marrow,* 917 A.2d 357, 361 n.3 (Pa. Cmwlth. 2007) (citation omitted).  Further, Pennsylvania is a fact-pleading jurisdiction; consequently, **a pleading must not only apprise the opposing party of the asserted claim, 'it must also formulate the issues by summarizing those facts essential to support the claim**.'  *Sevin v. Kelshaw, . . .* 611 A.2d 1232, 1235 ([Pa. Super.] 1992).

. . . . In *Yount v. Department of Corrections, . . .* 966 A.2d 1115, 1120–21 ([Pa.] 2009), our Supreme Court held that to prevail on a First Amendment retaliation claim, the complainant must state sufficient facts to show that: (1) he engaged in constitutionally[-]protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal.  *Id.*

In addition, this Court has cautioned that:

> [a] claim of retaliation is insufficiently pled where the prisoner merely alleges that he was charged and found guilty of misconduct.  Otherwise, under the guise of claiming retaliation, we would turn a case filed in our original jurisdiction into a thinly disguised impermissible appeal of the decision on the misconduct conviction.

*Brown v. Blaine,* 833 A.2d 1166, 1171 n.11 (Pa. Cmwlth. 2003) (citing *Edmunson v. Horn,* 694 A.2d 1179 (Pa. Cmwlth. 1997)).

*Richardson v. Wetzel,* 74 A.3d 353, 356-57 (Pa. Cmwlth. 2013) (emphasis added).

Further, "courts reviewing preliminary objections may not only consider the facts pled in the complaint, but also documents or exhibits attached to it." *Lawrence v. Dep't of Corr.,* 941 A.2d 70, 71 (Pa. Cmwlth. 2007).

According to Nifas' allegations set forth in his complaint, his removal from the RRL was conditioned upon him doing free labor in the RHU. Specifically, Nifas alleges, in relevant part:

> 26. **On Jan. 16, 2014**, . . . Mazurkiewicz and Joseph informed [Nifas] of the removal from the RRL confinement status. **[Nifas] appeal[ed] the PRC review for refusing to release [Nifas] to general population.**
>
> **[] Rozum; Mazurkiewicz; and Joseph['s] alleged transition plan was to have [Nifas] perform work in the restricted housing unit for 'free,' for several months doing 'free labor,' the other prisoners from population are hired to do and come to the RHU to work every[]day**. . . .
>
> 27. On January 28, 2014, [Nifas] wrote to . . . Witheriter regarding . . . Rozum; Gehlmann; Mazurkiewicz; and Joseph requiring [Nifas] to do 'free labor' for several months in the RHU, prior to being released . . . .
>
> 28. **On Feb. 1ˢᵗ, 2014, [Nifas] filed a grievance** . . . .
>
> . . . .
>
> 30. On Feb. 20, 2014 [Nifas] wrote . . . Witheriter about the [Prison Officials] refusal to release [Nifas] to general population, and that [Nifas] never received any documentation of this so-called step down plan policy to work for 'free' in the RHU, prior to being released to population.
>
> On **Feb. 20, 2014**, . . . **Gehlmann and Joseph falsified documentation to reverse previous support for release from RRL confinement, only because [Nifas] would not work for 'free' doing 'free labor' in the RHU for several months**. . . .

Complaint at 5-6 (emphasis added). The exhibits attached to Nifas' complaint further reflect that the working requirement is part of the step down program for release from RHU "to make sure [Nifas is] able to successfully reintegrate back into the General Population and adjust positively." Complaint Ex. 4 at 2. These documents reveal the work requirement's legitimate penological goal. Based on his allegations, Nifas was aware of this condition as of January 16, 2014. *See* Complaint at ¶26. Indeed, in his January 21, 2014 appeal from the January 16, 2014 action Nifas stated that "[Prison Officials] allege[d] that [Nifas] must do general 'Free Labor' prior to release for several months, if [Nifas] <u>does not</u> do the 'Free Labor' prior to release- that [Nifas] <u>cannot</u> be released to General Population . . . ." Complaint Ex. 3 at 2 (emphasis in original).

Although Nifas claims Prison Officials falsified documents to prevent him from being released from RHU because he filed a grievance, his complaint does not contain any allegations that could sustain that inference. Rather, his complaint sets forth factual averments, as well as his exhibits attached thereto, that sustain the inference that he was denied release from RHU because he did not perform the work requirements which furthered a legitimate penological goal. Thus, the allegation that Prison Officials falsified documents to prevent him from being released from RHU when Nifas' own documents support that he was denied this transfer for not participating in the work program, which Nifas averred was communicated to him in January 2014, cannot support a claim of retaliation.

After reviewing the complaint and the exhibits attached thereto, I "conclude that the alleged facts are insufficient to meet the fourth prong [of a retaliation claim] because they fail to demonstrate that the retaliatory action - [not removing Nifas from the RRL] - did not further a legitimate penological goal." *Richardson,* 74 A.3d at 357. This conclusion is especially true in light of the exhibits Nifas appended to his complaint which provide the reason Nifas' name was not

removed from the RRL, i.e., his refusal to work for free as part of the prison's step down program.

For all of the above reasons, I would affirm the trial court's order.

_____
ANNE E. COVEY, Judge