966 A.2d 1115

**Jon E. YOUNT, Appellant**

**v.**

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS and James L. Grace, Superintendent of SCI–Huntingdon, in his Official Capacity, Appellees.**

Supreme Court of Pennsylvania.

Argued March 4, 2008.

Re–Submitted Aug. 14, 2008.

Decided March 20, 2009.

See also, 886 A.2d 1163.

Marybeth Walsh, Institutional Law Project, for Jon E. Yount.

Debra S. Rand, Michael James McGovern, Suzanne Noelle Hueston, Harrisburg, for Dept. of Corrections.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TOOD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice EAKIN.

Appellant was convicted of first degree murder and sentenced to life imprisonment. Appellant escaped from a prison work detail with cooperation from a prison volunteer; recaptured, he was incarcerated at SCI–Huntingdon. While there, appellant and other prisoners sued the Pennsylvania Public Utility Commission, alleging the prison's telephone service provider overcharged inmates.

While the telecommunications suit was pending, a different prison volunteer broke down in tears and revealed personal information to appellant. Appellant also held private conversations with the volunteer, criticizing the prison. Upon learning of these events, the Department of Corrections (DOC) recommended appellant's transfer, noting his previous escape was consummated with the assistance of a prison volunteer, and reasoning the developing close relationship with another volunteer created an escape risk. Appellant was transferred to SCI–Greene, and DOC denied his transfer challenge.

Appellant subsequently filed a petition for review in the Commonwealth Court's original jurisdiction. He alleged his transfer was in retaliation for his role in the telecommunications litigation, and by transferring him, DOC interfered with and denied his right of access to the courts. He also averred the transfer caused him to lose touch with friends, family, and fellow members of a prison association, and that DOC violated his due process rights. Appellant sought re-transfer to SCI–Huntingdon and other relief.[1]

DOC filed preliminary objections in the nature of a demurrer to all claims. In a published opinion, the Commonwealth Court sustained the objections in part and overruled them in part. *Yount v. Department of Corrections,* 886 A.2d 1163 (Pa.Cmwlth.2005). Writing for a unanimous panel, Senior Judge McCloskey held appellant adequately pled a retaliatory transfer claim, which DOC did not adequately rebut. The court dismissed the remaining claims.

DOC then moved for summary judgment on the remaining retaliation claim, asserting appellant's desired remedy of transfer to SCI–Huntingdon was legally unavailable. The Commonwealth Court rendered a *per curiam* order granting summary judgment on alternate grounds, reasoning that to

1. Prisoners have no federal due process rights to be incarcerated in any particular prison or to avoid transfer to another prison absent a state-created liberty interest. *McKune v. Lile,* 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) ("prison officials have discretion to transfer [a prisoner] for whatever reason or for no reason at all."). Because appellant sought relief besides re-transfer, we do not reach the issue of whether re-transfer alone is a legally cognizable remedy.

prevail on a retaliation claim, a prisoner must demonstrate by a preponderance of the evidence he was retaliated against for exercising his constitutional rights and the retaliatory action does not advance legitimate penological goals. Commonwealth Court Order, 7/20/06, at 2 (citing *Abdul-Akbar v. Department of Corrections*, 910 F.Supp. 986 (D.Del.1995)). The court found appellant failed to meet these burdens of proof.

We initially note this Court's scope of review of an order granting summary judgment is plenary. *O'Donoghue v. Laurel Savings Association*, 556 Pa. 349, 728 A.2d 914, 916 (1999). Our standard of review is clear: the trial court's order will be reversed only where it is established the court committed an error of law or clearly abused its discretion. *Cochran v. GAF Corporation*, 542 Pa. 210, 666 A.2d 245, 248 (1995). Summary judgment is appropriate only in those cases where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Commission*, 555 Pa. 149, 723 A.2d 174, 176 (1999). The reviewing court must view the record in a light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* Where the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Cochran*, at 248.

Appellant argues that discovery was incomplete and material issues of fact existed, that the Commonwealth Court granted summary judgment on alternate grounds not raised by DOC, and that the Commonwealth Court improperly placed the burden on him to prove his transfer was not for a legitimate penological reason, in violation of *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir.2001) (shifting burden of proof to correctional facility to prove action furthered legitimate penological objective).

First, appellant asserts summary judgment was inappropriate because it deprived him of the opportunity for additional discovery. However, appellant points to his prison visitor list as the only additional evidence he could have

introduced; this list would have verified the volunteer who allegedly helped him escape was permitted to visit him at SCI–Huntingdon. We permitted appellant to supplement the record to include the visitor list, *see* Supreme Court Order, 2/29/08, and find appellant was not prejudiced by the preclusion of its admission; it does not suffice to raise an issue of material fact, as was determined below, and appellant is not entitled to relief on this issue.

Next, appellant avers summary judgment was unjustified because the Commonwealth Court *sua sponte* addressed the question of whether he raised a genuine issue of material fact. Appellant asserts granting summary judgment on an issue raised *sua sponte* is inappropriate.

This principle is well established in the Superior and Commonwealth Courts. *See, e.g., MacGregor v. Mediq, Inc.,* 395 Pa.Super. 221, 576 A.2d 1123 (1990); *Wojciechowski v. Murray,* 345 Pa.Super. 138, 497 A.2d 1342 (1985); *O'Hare v. County of Northampton,* 782 A.2d 7 (Pa.Cmwlth.2001); *Travers v. Cameron County School District,* 117 Pa.Cmwlth. 606, 544 A.2d 547 (1988). These cases are grounded in a concern that trial courts should not "act as the defendant's advocate." *O'Hare,* at 15. For a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard. *See Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899, 901 n. 5 (1974) (holding it inappropriate for trial court to raise failure to state claim upon which relief may be granted *sua sponte* ). By contrast, where a party has moved for summary judgment, the motion has been briefed, argued, and denied, and the trial court reverses itself and grants summary judgment on the same issue, the Superior Court has held the trial court's decision "unobjectionable." *See McIntyre Square Associates v. Evans,* 827 A.2d 446 (Pa.Super.2003).

Here, DOC asserted appellant failed to state a legally cognizable claim. The parties filed briefs, and the Common-

wealth Court issued a published opinion, in denying DOC's preliminary objections as to the retaliatory transfer claim. The Commonwealth Court found DOC failed to directly address the retaliation claim in its demurrer motion, *Yount,* at 1167–68, and a careful reading of DOC's brief in support of its preliminary objections confirms the Commonwealth Court's conclusion. Accordingly, the concern we expressed in *Luitweiler* is implicated because the merits of the dispositive issue were not fully litigated below. *Cf. McIntyre Square,* at 451 (noting relevant issue "was fully briefed and discussed").

That said, in the narrow circumstances of this case, no party will be prejudiced; we granted appeal and afforded both parties argument on the merits of the dispositive issue. It would unduly place form over function to remand the matter for a futile reconsideration below, since we considered the merits with the benefit of advocacy from both parties and a lower court opinion. To remand would require additional time and expense from the parties and the Commonwealth Court when, in the end, our interpretation of prevailing law would be based on the same record and advocacy. We reiterate, it is inappropriate for a trial court to grant summary judgment for reasons addressed *sua sponte.* However, the relevant issue was fully briefed and discussed before this Court, and the parties were afforded the appropriate judicial attention to which they are entitled. No relief is due on this claim.

As his final issue, appellant maintains the Commonwealth Court improperly placed the burden on him to demonstrate the transfer did not further a legitimate penological objective, in violation of *Rauser.* We disagree.

Retaliation claims are guided by the United States Supreme Court's decision in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), which held "courts are ill equipped to deal with the increasingly urgent problems of prison administration ...," and great deference must be accorded to the administrative determinations of prison officials. *Id.,* at 84–85, 107 S.Ct. 2254 (citation omitted). The United States Supreme Court further recognized prison rules and regula-

tions are presumptively valid unless a prisoner proves otherwise. *Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

Although the elements of a prison retaliation claim differ slightly among federal courts, generally courts require proof the inmate engaged in constitutionally protected conduct, prison officials took adverse action, and the protected conduct was a substantial or motivating factor for the action.[2] While courts generally agree on what elements must be proven under a retaliatory claim, courts disagree about who bears the burden of proof under each element.

The Second, Third, and Sixth Circuits have held that once a prisoner has raised an inference the protected conduct was a substantial factor motivating the adverse action, the burden shifts to the prison to show the action would have been taken absent the protected conduct.[3] Alternatively, the First, Fifth, Eighth, and Tenth Circuits, noting the increasingly urgent problems of prison administration and the need to accord great deference to the administrative determinations of prison officials, declined to adopt the burden-shifting approach. In these Circuits, the inmate bears the burden of showing the prison officials would not have taken the adverse action "but for" the protected conduct.[4] The Ninth Circuit does not shift the burden of proof and requires the inmate to show the prison action was not narrowly tailored to achieve a legitimate

2. *See, e.g., McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979); *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002); *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Freeman v. Texas Dep't of Criminal Justice,* 369 F.3d 854, 863 (5th Cir.2004); *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996); *Moore v. Plaster,* 266 F.3d 928, 931 (8th Cir.2001); *Rhodes v. Robinson,* 380 F.3d 1123, 1130 (9th Cir.2004); *Smith v. Maschner,* 899 F.2d 940, 949–50 (10th Cir.1990).

3. *Gayle,* at 682; *Rauser,* at 333; *Thaddeus X,* at 399.

4. *Layne v. Vinzant,* 657 F.2d 468, 475 (1st Cir.1981); *Clarke v. Stalder,* 121 F.3d 222, 231 (5th Cir.1997); *Cornell v. Woods,* 69 F.3d 1383, 1388 (8th Cir.1995); *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998).

penological objective. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005).

The final test for a retaliation claim—the test applied by the Commonwealth Court in the instant case—was set forth in *Abdul-Akbar.* Under this test, the burden of proof is placed on the prisoner to disprove a legitimate penological goal as well as to prove the other required elements of a retaliation claim. *Abdul-Akbar* established that a prisoner allege the action against him was unrelated to a legitimate penological justification, finding the "potential for abuse" in retaliation claims, and noting prison officials' "legitimate interest in the effective management of a detention facility." *Abdul-Akbar,* at 1000–01 (citations omitted).

We consider the 1998 Pennsylvania Prison Litigation Reform Act (PLRA), 42 Pa.C.S. § 6601 *et seq.*, and the 1995 federal Prison Litigation Reform Act (federal PLRA), P.L. 104–134 (codification scattered but particularly at 42 U.S.C. § 1997e). In each Act, responding to perceived abuses in prisoner litigation, the legislatures first channeled inmates' complaints through correctional institutions' internal grievance-resolution processes, thus narrowing inmates' recourse through the courts. The PLRA was inspired by the federal PLRA, *see Payne v. Pa. Department of Corrections,* 582 Pa. 375, 871 A.2d 795, 800 (2005), and the two are "comparable in purpose and effect." *Corliss v. Varner,* 934 A.2d 748, 749 (Pa.Cmwlth.2007). The United States Supreme Court examined the federal PLRA legislative history and found the statute is intended to promote administrative redress, to filter out frivolous claims, and to facilitate better-prepared litigation of non-frivolous prisoner claims by the creation of an administrative record. *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

*Turner* and *Overton* as well as the PLRA lead us to interpret ambiguities in the legal standards governing prisoner litigation so as to promote administrative discretion. Although *Turner* and its progeny address prison rules and regulations, we see no reason why their principles should not

fully apply to other prison actions, such as the transfer here. Accordingly, we hold administrative prisoner transfers are presumed to further a legitimate penological objective unless a prisoner plaintiff proves otherwise.

As explained by the Commonwealth Court, under the *Abdul-Akbar* standard, a prisoner plaintiff must demonstrate by a preponderance of the evidence he was retaliated against for exercising his constitutional rights and the retaliatory action does not advance legitimate penological goals. Commonwealth Court Order, 7/20/06, at 2.

We agree with appellant's averment that retaliation for filing a lawsuit against the prison's telecommunication provider, if it has occurred, violates his constitutional right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 822–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (inmate has right to access courts to challenge condition of confinement); *see also Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (conditions of confinement encompass "all inmate suits about prison life").[5]

Appellant alleges his transfer constituted adverse action. "Adverse action," for purposes of evaluating an inmate's retaliation claim, is one which is "sufficient to deter a person of ordinary firmness from exercising his [constitutional rights.]" *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000). Where a plaintiff advances a colorable, but not necessarily incontrovertible, argument he was subjected to adverse action, the issue is best resolved by the fact-finder. *Id.* We agree with the Third Circuit Court of Appeals that: "Although it is possible that in some cases [a transfer] would not deter a prisoner of ordinary firmness from exercising his or her [constitutional right to access the courts], we cannot say that such action can never amount to adverse action." *Id.* Accordingly, whether appellant has met this element is an issue of material fact best resolved by the fact-finder.

5. Appellant's claim that he was denied access to the courts was dismissed by the Commonwealth Court for failure to allege a specific instance where he had actually been denied access to court. *Yount,* at 1169 n. 4.

Finally, we consider whether appellant produced sufficient evidence to rebut the presumption the transfer furthered legitimate penological objectives. Appellant does not refer to *Abdul-Akbar's* requirement that a prisoner show a legitimate penological object was not furthered; instead, he argues the circumstantial evidence of the temporal proximity between his transfer and the initiation of the telecommunications case reveals DOC's intent to interfere with his constitutional rights. We disagree.

Appellant initiated his telecommunications case in March, 2004. His transfer was not recommended for nearly six months, and was not effectuated until November 30, 2004. While the civil litigation was moving forward during the transfer process—a hearing was held September 28, 2004, and appellant and his co-plaintiffs tendered a settlement offer November 1, 2004—the eight-month delay between the commencement of the litigation and appellant's transfer does not support an inference DOC interfered with his constitutional rights. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) (finding of retaliatory intent appropriate only when "timing of the alleged retaliatory action [is] unusually suggestive of retaliatory motive"); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (holding gap of two to three months insufficient temporal proximity to establish causation in employment context).

Further, there was highly relevant temporal proximity between the events constituting DOC's grounds for the transfer and the decision to transfer appellant. DOC relied on a prison volunteer's disclosure of personal information and a discussion between the volunteer and appellant occurring September 20, 2004. DOC learned of this behavior four days later,[6] and recommended appellant's transfer the next day, citing a need to separate appellant from the volunteer due to his escape history. This rapid transfer recommendation militates in fa-

6. Appellant produced DOC internal emails indicating he advised an SCI–Huntingdon Activity Manager of his communications with the volunteer. Appellant now objects to the introduction of these emails. This issue is waived because appellant himself offered the emails into evidence.

vor of considering DOC's security concern genuine, rather than pretextual. Based on the foregoing, we conclude no reasonable jury could find appellant's transfer did not further legitimate penologial objectives.[7]

For the foregoing reasons, we find appellant failed to demonstrate his transfer was due to retaliation by prison officials for his institution of the telecommunications case. Accordingly, the order of the Commonwealth Court is affirmed.

Jurisdiction relinquished.

Justice SAYLOR and Justice GREENSPAN join the opinion.

Justice TODD files a concurring opinion in which Chief Justice CASTILLE and Justice BAER joins.

Justice McCAFFERY files a concurring opinion.

## *CONCURRING OPINION*

Justice TODD.

I agree with the conclusion reached by the majority that the Commonwealth Court correctly awarded summary judgment to Appellees in this case. However, I write separately because I disagree with the analysis employed by the majority in reaching this result.

After discussing the various tests suggested by federal caselaw, the majority adopts a test which does not reflect the current law in any federal court[1] because it "promote[s]

7. Appellant offers additional arguments attempting to assert questions of fact remain as to whether he escaped with the aid of a prison volunteer and demonstrated DOC's retaliatory intent, whether DOC genuinely had concern he would escape, and whether DOC should have dismissed its volunteer instead of transferring appellant. Our review of the record reveals no open issues of material fact remain. DOC introduced uncontested news reports showing appellant escaped with the aid of a prison volunteer. Further, we reject appellant's arguments to the extent he challenges DOC's decisions regarding the day-to-day administration of its facilities. *See Turner,* at 89, 107 S.Ct. 2254.

1. The majority opinion follows *Abdul-Akbar v. Department of Corrections,* 910 F.Supp. 986 (D.Del.1995), *aff'd without opinion,* 111 F.3d

administrative discretion" to do so. Majority Op. at 427, 966 A.2d at 1121. I agree with the majority that protecting the discretion afforded prison officials in performing their difficult and important duties is a weighty policy goal; I disagree, however, that it is the only consideration in this type of case. Rather, for the reasons which follow, I would adopt the Third Circuit's approach to prisoner retaliation claims as laid out in *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001).[2]

The majority correctly instructs that, in determining which approach to adopt, we should look to *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and the state and federal Prison Litigation Reform Acts ("the PLRAs"), 42 Pa.C.S.A. § 6601 *et seq.* and P.L. 104–134 (codification scattered but particularly at 42 U.S.C.A. § 1997(e)), respectively, to derive the principles underlying our approach to prisoner litigation, and then adopt a test consistent with those principles. Majority Op. at 424–27, 427, 966 A.2d at 1119–20, 1120. However, while the majority suggests "retaliation claims are guided by the United States Supreme Court's decision in *Turner,*" Majority Op. at 425, 966 A.2d at 1119, I note that *Turner* addresses prison regulations—not retaliation for constitutionally protected conduct. Accordingly, we should be mindful that while *Turner* outlines policy goals applicable to our consideration of prison litigation, it does not implicate the critical issue herein: adverse action by public officials taken as a result of the exercise of a person's constitutional rights. For that reason, I believe we should instead begin with a consideration of the federal law of retaliation, and then consider how

125 (3d Cir.1997). However, that opinion has been displaced by the Third Circuit's decision in *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001).

**2.** I recognize, of course, that we are not bound by the decisions of federal district and circuit courts. *See, e.g., Office of Disciplinary Counsel v. Marcone,* 579 Pa. 1, 17 n. 12, 855 A.2d 654, 664 n. 12 (Pa.2004). However, the majority has chosen to follow an (implicitly) rejected district court decision, *Abdul–Akbar, supra,* rather than the appellate judgment which displaced it, *Rauser, supra.* Moreover, in the instant case, the parties both explicitly urge that we adopt *Rauser* and apply it in Pennsylvania, although their readings of the decision differ. *See* Brief for Appellant at 14; Brief for Appellees at 8.

the particular policy concerns inherent in a prison setting affect the proper disposition of what is, fundamentally, a retaliation claim.

The law on employment retaliation claims is set out in the Supreme Court's decision in *Mount Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[3] In that case, a discharged public school teacher alleged he was dismissed in retaliation for the exercise of his First and Fourteenth Amendment rights. The Supreme Court held that the teacher was required to show he had engaged in constitutionally protected conduct, and his constitutionally protected conduct was a "substantial factor" in the decision not to retain him. If it was, the court concluded, the burden of proof shifts to the school administrators who dismissed him, who could defeat his suit by proving they would have taken the same action regardless of whether the employee had taken the actions in question.[4] *Id.* at 287, 97 S.Ct. 568.

In addition to the Third Circuit's decision in *Rauser,* which I discuss in detail below, the *Mount Healthy* burden-shifting framework has been applied in the inmate retaliation context by several other federal circuit courts. *See Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984); *Thaddeus-X v. Blatter,* 175 F.3d 378, 386 (6th Cir.1999) (*en banc* ), *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996), *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996) (all applying *Mount Healthy* to claims of retaliation brought by prisoners); *see also Siggers-El v. Barlow,* 412 F.3d 693, 699 (6th Cir.2005); *Hoskins v. Lenear,* 395 F.3d 372, 375 (7th Cir.2005).

By contrast, the law governing prison regulation is set out in *Turner.* There, the Supreme Court noted that regulations imposed by prison administrators—who face a difficult task and are presumed to possess administrative expertise not typical of a member of the appellate bench—are entitled to

3. Although different circuits apply different tests to inmate retaliation claims, the United States Supreme Court has not yet spoken to whether *Mount Healthy* applies to retaliation claims filed in this context.

4. The teacher exercised his right to free speech by, *inter alia,* informing a disc jockey at a local radio station of the substance of a memorandum to teachers from the principal dealing with the subject of teacher attire. 429 U.S. at 282, 97 S.Ct. 568.

judicial deference even where they impinge on inmates' constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254; *see also Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (repeatedly deferring to prison administrators' judgment in implementing the Religious Land Use and Institutionalized Persons Act). As a result, the courts do not micromanage prison policy, but afford a broad swath of discretion to prison officials endeavoring to preserve discipline and security in correctional institutions. To do otherwise would be to substitute judicial judgment, informed by only the written pleadings of the parties, for the judgment of career experts in prison administration and security. *See Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (noting that because "the problems of prisons in America are complex and intractable" and courts particularly "ill equipped" to deal with those problems, broad deference to prison administrators is appropriate), *abrogated on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

As a result, until the middle of the 20th century, the rights of prisoners were, if any, exceedingly limited. *See Shaw v. Murphy,* 532 U.S. 223, 228–29, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001) (collecting cases). Nonetheless, courts have recognized for at least several decades that constitutional rights are not forfeited *in toto* at the prison door. In 1942, the U.S. Supreme Court recognized a right of prisoners to access the courts to pursue criminal appeals and to petition the courts for writs of *habeas corpus. Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) (striking as unconstitutional a Michigan regulation which precluded prisoners from filing *habeas* petitions unless a parole board's "legal investigator" found them "properly drawn"). The right to file *habeas* petitions was subsequently further explicated to provide inmates "adequate and effective appellate review" which would produce "a meaningful appeal" from conviction and that prisoners retain a "fundamental constitutional right of access to the courts." *See Bounds v. Smith,* 430 U.S. 817, 822–23, 828, 97 S.Ct. 1491, 52

L.Ed.2d 72 (1977) (collecting cases). Since *Bounds,* the Supreme Court has recognized the right to access the courts so inmates may "challenge the conditions of their confinement." *Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (imposing a duty on the sovereign to "provide humane conditions of confinement"). While these two principles—providing access to the courts and preserving administrative discretion—may superficially appear to be in tension, that tension is easily resolved by the general rule that a right of access to the courts is preserved, but the courts, after granting access, will properly exercise restraint and defer to reasonable administrative decisions.

Consistent with this general rule, prisoners' rights against transfer are both limited and vigorously disputed. There is, *initially, no* constitutional right to be detained in any particular prison. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution.... The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." (emphasis original)). Nor does a prisoner have any constitutional right against being transferred from one prison to another. *See Olim v. Wakinekona,* 461 U.S. 238, 251, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

However, in *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court held that the Due Process Clause does not impose judicial oversight on administrative decisions by prison officials as long as those decisions comport "with the sentence imposed upon [the prisoner] and are *not otherwise violative of the Constitution." Id.* at 242, 96 S.Ct. 2543 (emphasis added). Courts have consistently interpreted this language to mean that where an inmate is subjected to retaliation for constitutionally protected conduct, his due process rights are violated even if the retaliatory act in itself would not give rise to a constitutional tort. *See,*

*e.g., Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir.2000) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for [the] exercise of a constitutional right." (internal quotation marks omitted)); *see also Gomez v. Vernon,* 255 F.3d 1118, 1122 (9th Cir.2001), *cert. denied,* 534 U.S. 1066, 122 S.Ct. 667, 151 L.Ed.2d 581 (2001); *Frazier v. Dubois,* 922 F.2d 560 (10th Cir.1990); *Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985); *Murphy v. Missouri Dep't of Correction,* 769 F.2d 502 (8th Cir.1985).

As the majority notes, Majority Op. at 426–28, 966 A.2d at 1120–21, the legislatures of this Commonwealth and of the United States have supplemented this jurisprudence by passing Prison Litigation Reform Acts, channeling grievances into internal resolution processes and attempting to decrease the burden frivolous prisoner complaints place on the judiciary.

Accordingly, prisoners' rights are limited, but not eliminated, and while prisoners may be transferred from prison to prison for no reason at all, they may not be transferred in pure retaliation for the exercise of their constitutional rights. *Allah, Rauser.*

In *Rauser,* an inmate alleged that because he refused to enter into Alcoholics Anonymous and Narcotics Anonymous programs which required participants to accept God as part of treating their addictions, the Department of Corrections ("DOC") issued a negative parole recommendation and demoted him from a Class 3, Step D worker earning 41 cents an hour to a Class 1, Step A worker earning 18 cents an hour. 241 F.3d at 332. The court concluded Rauser pled three facts which might convince a reasonable jury that he was retaliated against for exercising his constitutional rights: (1) his own testimony that a DOC official threatened to deny him parole if he would "try and disrupt" the treatment programs with constitutional challenges; (2) the explicit DOC acknowledgment that Rauser's negative parole recommendation was due to his failure to complete Alcoholics Anonymous and Narcotics Anonymous; and (3) a "suggestive temporal proximity be-

tween his insistence on his First Amendment rights and his subsequent transfer and wage reduction." *Id.* at 334. Finding Rauser demonstrated there were issues of material fact with respect to the three prongs set out above, and noting DOC offered no evidence that the actions against Rauser were taken for any legitimate penological reason, the court held that summary judgment was inappropriately granted. Accordingly, the court reversed the trial court's order and remanded the matter for consideration on the merits.

In doing so, the *Rauser* court adopted the *Mount Healthy* burden-shifting framework. However, *Rauser* modified the *Mount Healthy* test by requiring defendant prison officials to show only a reasonable relationship between the challenged action and a legitimate penological objective, rather than requiring them to prove they would have taken the action regardless of the prisoner's constitutionally protected conduct. The *Rauser* court justified this modification by reference to the deference afforded prison officials under *Turner.* Thus, *Rauser* requires a prisoner to show that: (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action at the hands of prison officials; and (3) a causal link exists between his protected conduct and the adverse action against him; that is, that his protected conduct was "a substantial or motivating factor" for the action against him. 241 F.3d at 333 (citation omitted). If those three factors are met, the burden shifts to prison officials to prove that the challenged action was reasonably related to a legitimate penological interest. *Id.* at 334.

In my opinion, the virtue of the *Rauser* approach is its recognition that claims such as Appellant's are fundamentally retaliation claims, and its preservation of the basic framework for retaliation claims laid out in *Mount Healthy*—requiring a threshold showing by the plaintiff of protected conduct, adverse action, and a causal relationship between the two, and then shifting the burden to administrators to demonstrate the action was permissible considering the level of discretion afforded them. *Rauser* further recognizes prison officials are entitled to greater deference than public employers because of the unique challenges surrounding prison administration, and

so affords them greater discretion—applying the *Turner* standard of a reasonable relationship between administrative action and a legitimate administrative purpose, rather than requiring administrators to prove the prisoner's protected conduct had no causal relation to the action against him. In short, *Rauser* affords prison officials' administrative decisions heightened deference, but otherwise treats a retaliation claim in this context much like any other.[5]

Moreover, *Rauser's* burden-shifting mechanism strikes the appropriate balance between protecting inmates' constitutional rights and preserving a zone of discretion for prison administrators. Requiring an inmate bringing suit to demonstrate a causal relationship between his protected conduct and an adverse penological action imposes a high bar on lawsuits, satisfying the policy objective of filtering out groundless claims which underlies the PLRAs. Shifting the burden to prison officials to demonstrate a legitimate penological objective once a prisoner has met the substantial burden of showing causation preserves an appropriate role for the judiciary in protecting prisoners' ability to exercise their constitutional rights without being subjected to retaliatory punishment by those with the most authority over their day-to-day lives.

By contrast, the majority's chosen test—adopted from *Abdul–Akbar, supra*—adds an extra layer of deference by not shifting the burden to prison officials to establish a reasonable connection to a legitimate penological justification for their actions. The majority adopts this test without explaining why it is necessary to do so to protect administrators' lawful discretion. Moreover, in imposing the burden on prisoners to *disprove* a legitimate penological justification, the majority assigns the burden of proof to the party less expert on the subject and without particular knowledge of prison adminis-

5. The policy imperative of promoting administrative discretion is not a blank check; rather, that policy goal has merely prompted the federal courts to permit that broad swath of administrative regulation which is reasonably related to a legitimate penological objective. *Turner.* It does not eliminate or undermine the competing policy concern underlying retaliation jurisprudence—preventing public administrators from punishing anyone, employee or prisoner, for the mere exercise of their constitutional rights.

tration, or of the facts and circumstances underlying a particular transfer—even though courts have often held that a burden of proof should be placed on the party best able to meet that burden. *See* Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure § 7.8 (3d ed. 1985) (cited in Lisa Brodoff, Lifting Burdens: Proof, Social Justice, and Public Assistance Administrative Hearings, 32 N.Y.U. Rev. L. & Soc. Change 131, 178 n. 233 (2008)); *see, e.g.,* 31A CJS Evidence 2003 (Effect of Particular Knowledge or Control of Evidence Generally); *Campbell v. U.S.,* 365 U.S. 85, 96, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); *Skeen v. Stanley Co. of America,* 362 Pa. 174, 178, 66 A.2d 774, 776 (1949); *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 452–53, 246 A.2d 668, 672 (1968) (citing 9 Wigmore, Evidence § 2486 at 275 (1940)); *Hepps v. Philadelphia Newspapers, Inc.,* 506 Pa. 304, 312, 485 A.2d 374, 378 (1984) (concluding that a burden should be placed on the party who "has peculiar means of knowledge of the particular fact in issue"), *rev'd on other grounds,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).[6]

Thus, while I disagree with the majority as to the proper test to apply to Appellant's claim, I concur because I conclude

6. The other tests proffered by the various federal circuits are also, in my opinion, inferior to the *Rauser* approach. Requiring an inmate to demonstrate but-for causality, as do the First, Fifth, Eighth, and Tenth Circuit Courts of Appeal, *see McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979), *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *Goff v. Burton,* 7 F.3d 734, 737 (8th Cir.1993), *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998), would risk imposing an unreasonably high bar and deferring not just to reasonable administrative decisions, but even to unreasonable ones. Moreover, applying a but-for test of causation would require a searching judicial inquiry into prison officials' motivation, since a court would have to consider every document with any relationship to the action or similar actions. This would impose a very high burden of production on officials while, as in *Abdul–Akbar,* imposing a high burden of persuasion on plaintiffs, simultaneously rendering it difficult for prisoners subjected to retaliation to obtain judicial review and, in violation of the express intent of the drafters of the state and federal PLRAs, rendering it difficult for prison officials to focus on doing their jobs rather than responding to multitudinous discovery requests. Furthermore, requiring a restriction to be "narrowly tailored" to achieve a legitimate objective, as does the Ninth Circuit, *see Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005), imposes a level of scrutiny inconsistent with the broad discretion

*Rauser* does not compel a different result than *Abdul-Akbar.* As Justice Eakin's majority opinion reasons, Appellant's reliance on temporal proximity to show causation is insufficient to satisfy the third *Rauser* factor, so which party bears the burden of proof on the *Turner* issue is not essential to the outcome of this case. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) ("unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation" (emphasis supplied)).[7] Indeed, Appellant can show only that he was transferred in the same year he brought suit against a government contractor. The temporal connection to DOC's stated cause is much more direct, and the parties do not dispute any of the material facts. Accordingly, Appellant's transfer is not closely connected to his initiation of the telecommunications litigation, and so Appellant has not introduced adequate evidence to enable a reasonable jury to find for him on the issue of causation. *Compare Rauser,* 241 F.3d at 334 (noting the plaintiff therein "presented a great deal of evidence" tending to show causation); *see also Watkins v. Hosp. of University of Pennsylvania, Penn Health Systems,* 737 A.2d 263, 267 (Pa.Super.1999) (holding "[s]peculative causality is insufficient to defeat a motion for summary judgment").

Chief Justice CASTILLE and Justice BAER join this opinion.

## *CONCURRING OPINION*

Justice McCAFFERY.

I fully concur with and join the majority's holding that the Commonwealth Court correctly entered summary judgment in

afforded prison officials under both statutory and United States Supreme Court precedent.

7. Where temporal proximity alone does not support an inference of causation, courts considering employment cases have traditionally looked to whether the period between the protected conduct and the adverse action was marked by ongoing antagonism. *See, e.g., Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000). Appellant proffers no such evidence here.

this case, and I further agree with the majority's legal conclusion that administrative prison transfers are presumed to further a legitimate penological objective unless a prisoner-plaintiff proves otherwise. Thus, I join the majority opinion with the exception of footnote one. In particular, I wholly agree with this Court's rejection of the burden-shifting approach set forth in *Rauser.*

However, I write separately to express my opinion that the essential relief requested by Appellant, to wit, re-transfer to SCI–Huntingdon, is simply not a cognizable remedy under any test.

Appellees herein moved for summary judgment on the ground that the specific remedy that Appellant seeks—the re-transfer back to SCI–Huntingdon from SCI–Greene—is not one that is available to him. The Commonwealth Court and the majority herein declined to address that issue, and instead determined that Appellant had failed to set forth a viable cause of action based on retaliation for having engaged in constitutionally protected conduct. However, I believe it is logical and necessary for this Court to determine as an initial matter whether the relief Appellant seeks is cognizable before determining whether he has set forth a valid cause of action. If the remedy is not cognizable, it is irrelevant whether the cause of action can survive scrutiny. If we determine that prisoners have no right to re-transfer as a remedy in a retaliation case, a position that I advocate, then these causes of action are subject to dismissal at the outset upon proper motion. However, if the issue of available remedy remains unresolved at this time, then similar causes of action will proceed beyond the pleading stage, resulting in the unnecessary waste of precious time and resources of prison officials and the courts. Further, by failing now to address the issue of whether a prisoner may or may not seek transfer or re-transfer as a remedy for a retaliation claim, we simply invite the filing of additional meritless lawsuits by prisoners unhappy with their current places of confinement. Therefore, I believe it is imperative that we first address the issue of whether the courts can grant the relief Appellant requests. For the

following reasons, I believe they cannot; I do not believe that Appellant has a cognizable remedy.

There is no dispute that prison officials have broad discretion in carrying out their difficult duties to administer and control prison populations, and accordingly courts do not exercise oversight of the decisions of such officials except under limited circumstances. On more than one occasion, the United States Supreme Court has expressed the opinion that excessive judicial involvement in prison management "often squander[s] judicial resources with little offsetting benefit to anyone" and "run[s] counter to the view ... that ... courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment." *Sandin v. Conner,* 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Further, the Supreme Court has consistently held that prisoners have no federal due process rights to be incarcerated in any particular prison or to avoid transfer to another prison absent a **state-created** liberty interest. *See McKune v. Lile,* 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); *Olim v. Wakinekona,* 461 U.S. 238, 251, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes,* 427 U.S. 236, 241, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); and *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). As the Court stated in *McKune*:

> It is well settled that the decision where to house inmates is at the core of prison administrators' expertise. For this reason[,] the [United States Supreme] Court has not required [prison] administrators to conduct a hearing before transferring a prisoner to a bed in a different prison, even if life in one prison is much more disagreeable than in another. The Court has considered the proposition that a prisoner in a more comfortable facility might begin to feel entitled to remain there throughout his term of incarceration. The Court has concluded, nevertheless, that this expectation is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him **for whatever reason or for no reason at all.**

*Id.* at 39, 122 S.Ct. 2017 (citations and quotation marks omitted; emphasis added). And, as the Court stated in *Montanye*:

> [N]o Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, **absent some right or justifiable expectation rooted in state law** that he will not be transferred except for misbehavior or upon the occurrence of other specified events.... As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers **whether or not they** are the result of the inmate's misbehavior or **may be labeled as disciplinary or punitive.**

*Id.* at 242, 96 S.Ct. 2543 (emphases added).[1]

It follows that if prison administrators may transfer prisoners for **any** reason, and if a prisoner has no right to a hearing prior to his or her transfer to another prison, then a prisoner has no right to seek the remedy of re-transfer even under a claim of a retaliatory transfer, absent a violation of state law, which Appellant has not alleged in this case.

Further, although suits brought under 42 U.S.C. § 1983 to enforce constitutional rights typically contemplate injunctive relief as well as monetary relief, the United States Supreme Court has noted that the availability of this relief is quite circumscribed:

> Section 1983 by its terms confers authority to grant equitable relief as well as damages, but its words allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding. Even in an action between private

1. Appellant cites no Pennsylvania law establishing a right or expectation that he would not be transferred except for misbehavior or upon the occurrence of other specified events.

individuals, it has long been held that an injunction is to be used sparingly, and only in a clear and plain case. When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.

*Rizzo v. Goode*, 423 U.S. 362, 378–79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (citations and quotation marks omitted).

Therefore, I would hold that re-transfer is not a cognizable remedy when a prisoner alleges that he was transferred from one prison to another in retaliation for having exercised a constitutional right.[2] Because I believe Appellant herein cannot realize the remedy he seeks under any circumstances, I believe further that there is no need to engage in a determination as to whether he has set forth a legitimate retaliation claim.

2. I note that monetary damages **are** available in prisoner retaliation cases, as well as **appropriate** injunctive relief. *See, e.g., Wilson v. Marrow,* 917 A.2d 357 (Pa.Cmwlth.2007) (disposing of a prisoner retaliation and other constitutional tort claim seeking monetary damages); *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (establishing the "*Rauser* test" for a prisoner retaliation claim that in part sought monetary damages); *Allah v. Seiverling,* 229 F.3d 220 (3d Cir.2000) (reinstating a prisoner retaliation action that in part sought compensatory and punitive damages). Moreover, Section 6604(a) of the Pennsylvania Prison Litigation Reform Act provides that the relief to be afforded under prison conditions litigation be, among other things, "the least intrusive means necessary to correct the violation of ... law." 42 Pa.C.S. § 6604(a). Re-transfer is hardly the least intrusive means necessary in light of the availability of monetary damages or other appropriate and narrowly-tailored injunctive relief.