IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
   :
v.    :
   :
Raymel Addison,    :   No. 174 M.D. 2021
         Petitioner    :   Submitted: July 29, 2022


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                 FILED: January 13, 2023


Before the Court are the "Preliminary Objections to the Petition for Review" (Preliminary Objections) filed by the Commonwealth of Pennsylvania, Department of Corrections (Department) on September 28, 2021, in response to *pro se* petitioner Raymel Addison's (Addison) "Motion to Be Exonerated From Misconduct Number #D314112" (Petition), in which Addison seeks review in our original jurisdiction of an inmate misconduct conviction that Addison alleges prison authorities issued in retaliation for Addison having filed numerous complaints of harassment against various staff members. For the reasons that follow, we sustain the Preliminary Objections.

Addison is an individual incarcerated at State Correctional Institution at Benner (SCI-Benner). *See* Preliminary Objections at 1. On February 10, 2021, Addison received Department Misconduct Report No. D314112 (Misconduct), which alleged violations of Prison Rule 15, Threatening an Employee, and Prison Rule 33, Using Abusive, Obscene or Inappropriate Language to or About an Employee, for threats towards prison officials contained in a Form CD-135A

Request to Staff Member complaint form allegedly filled out and signed by Addison (Retaliation Complaint). *See* Misconduct, attached to the Petition at Ex-5. Addison claims the Misconduct was issued in retaliation for his multiple complaints against prison personnel for alleged harassment. *See* Petition at 1 (pagination supplied); *see also* Preliminary Objections at 2.

In the Petition, Addison alleges that prison officials violated his rights under the Sixth Amendment to the United States Constitution by failing to provide him with an opportunity to challenge evidence used against him at the proceeding on the Misconduct and the appeals that followed. *See* Preliminary Objections at 2; Petition at 1-4. Specifically, Addison contends that officials violated his rights by not providing a handwriting expert to aid his defense in a hearing on the Misconduct and that the Hearing Examiner "went way beyond her job and duty acting [a]s a 'handwriting' expert" by personally reviewing the Retaliation Complaint in an effort to determine the merits of the Misconduct. Petition at 1. Addison argues that, although he repeatedly asked for the appointment of a handwriting expert at each stage of review of the Misconduct,[1] or a continuance of the proceedings to allow time for him to secure such an expert, his requests were refused. *See* Petition at 2. Addison claims that, following the prosecution of his challenge to and appeals of the Misconduct conviction, he secured through his own efforts and expense a report from a handwriting expert that opines that Addison did not author the Retaliation Complaint upon which the Misconduct was based. *See* Petition at 2-3; *see also* Report of Curt Baggett dated March 19, 2021 (Expert Report), attached to Petition at Ex. 1-2. Addison asks this Court to review the Misconduct conviction and

---

[1] Addison claimed that evidence from a handwriting expert "was the only way to prove and show that [Addison] was "[n]ot" the [a]uthor of the [h]andwriting" contained in the Retaliation Complaint. Petition at 2.

"exonerate" him of the Misconduct on the basis of the Expert Report.  *See* Petition at 3.  Addison further requests that this Court:  (1) transfer him to a medical facility for treatment; and (2) investigate Grievance No. 914328, in which Addison claims that a member of the prison psychology staff breached a duty of confidentiality in relation to him.  *See* Petition at 3; Preliminary Objections at 3.

The Department responded to the Petition by filing the Preliminary Objections.  Therein, the Department claims that this Court lacks jurisdiction to review inmate misconduct convictions, and that, in any event, Addison received all process to which he was entitled in the misconduct process.  *See* Preliminary Objections at 7-10.  The Department further demurs to the Petition's retaliation claim, arguing that the Petition lacks adequate detail to support his claim that the Misconduct was issued in response to any harassment complaints he made.  *See id.* at 3-7.  Likewise, the Department claims that, to the extent Addison raises due process claims regarding the Hearing Examiner's review of evidence or failure to afford Addison a handwriting expert, Addison has failed to state a claim with regard to either claim.  *See* Preliminary Objections at 7-10.  Further, the Department argues that, to the extent Addison purports to raise a Sixth Amendment claim the Sixth Amendment is inapplicable to prison misconduct hearings, which are not criminal trials.  *See id.*

Initially, we note that:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom.  The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.  In order to sustain preliminary objections, it must appear with certainty that

3

the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010).

First, regarding his request that this Court "exonerate" him of the Misconduct, Addison essentially asks this Court to review the evidence submitted at the Misconduct hearing together with the handwriting expert report he attached as an exhibit to the Petition for the purpose of overturning the Misconduct conviction. *See* Petition at 1-4. This we may not do.

This Court lacks jurisdiction to consider the Petition to the extent that it seeks review of the Misconduct. This Court has held that the Department's internal grievance procedure provides constitutionally adequate and meaningful legal remedies to inmates. *See Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999); *see also Fennell v. Goss* (Pa. Cmwlth., No. 1198 C.D. 2015, filed Feb. 5, 2016),[2] slip op. at 9. In *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), our Supreme Court agreed with this Court that "internal prison operations are more properly left to the legislative and executive branches, and that prison officials must be allowed to exercise their judgment in the execution of policies necessary to

---

[2] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

4

preserve order and maintain security free from judicial interference." *Id.* at 358 (citing *Robson v. Biester,* 420 A.2d 9 (Pa. Cmwlth. 1980)). In *Bronson*, the Supreme Court held that this Court lacks jurisdiction to review inmate appeals of decisions by intra-prison disciplinary tribunals by explaining:

> Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding. Therefore, the [C]ommonwealth [C]ourt does not have appellate jurisdiction, under 42 Pa.C.S § 763, over inmate appeals of decisions by intra-prison disciplinary tribunals.

*Id.* at 358-59 (internal citations and quotations omitted). Though Addison brings this Petition before this Court in our original jurisdiction, our Supreme Court further held in *Bronson* that this Court cannot entertain such matters in our original jurisdiction, except in very limited circumstances. As the Supreme Court explained:

> Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens . . . [. I]ncarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Unless an inmate can identify a personal or property interest . . . not limited by Department of Corrections regulations and which has been affected by a final decision of the [D]epartment the decision is not an adjudication subject to the court's review.

5

*Id.* at 359 (internal citation, quotations, and brackets omitted). Thus, to the extent Addison challenges the Misconduct conviction, we do not have either appellate or original jurisdiction to consider this finding because review of such intra-prison discipline is solely a matter of internal prison administration. *See id.* at 358-59.

Further, to the extent Addison argues that his rights were violated by the failure of the Department to provide him with a handwriting expert, we do not agree. *See* Petition at 2-3. As this Court has explained:

> In the context of prison disciplinary proceedings, three components, at minimum, must be present to satisfy an inmate's right to procedural due process:
>
> > Advance written notice of the claimed violation; a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken; . . . and the ability to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

*Feliciano v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 588 M.D. 2019, filed Apr. 13, 2021) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 563, 566 (1974)) (internal brackets omitted); *see also Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980).

The facts alleged by Addison regarding his requested handwriting expert facially suggest that the Department did not comply with the ability to call witnesses and present documentary evidence component. However, Addison cites no authority that establishes that prisoners have a right that requires prison officials to find, retain, and present an expert witness on a prisoner's behalf in a disciplinary proceeding. While we have found no Pennsylvania case directly on point, we note

6

that multiple federal courts have determined that a prisoner's rights are not denied when prison officials do not comply with a prisoner's request to have an expert witness secured and provided for the prisoner's defense in disciplinary hearings. *See Garrett v. Smith*, 180 F. App'x 379, 381 (3d Cir. 2006) (finding due process not denied where prison officials refused prisoner request for voice analysis expert witness to analyze recorded phone conversation in aid of prisoner's defense); *see also Spence v. Farrier,* 807 F.2d 753, 755-56 (8th Cir.1986) (finding no prisoner right to present expert testimony where such testimony would interfere with institutional goals and prompt resolution of disciplinary actions). We agree that requiring prison officials to locate, secure, and ultimately furnish Addison with a handwriting expert would interfere with both the Department's institutional goals of preventing prisoner threats to Department employees and preventing prisoners from using abusive, obscene, or inappropriate language to or about Department employees and would impede the prompt resolution of disciplinary actions. Thus, we hold that the Department did not violate Addison's rights by denying his request for a handwriting expert in this matter.[3] *See Garrett*; *Spence*.

Further, to the extent Addison argues that he was denied the process required by the Sixth Amendment to the Constitution of the United States in criminal prosecutions,[4] he is incorrect. The Sixth Amendment applies to criminal

---

[3] The existence of the Expert Report attached to the Petition, which Addison argues exonerates him from the Misconduct, does not change our analysis. *See* Petition, Ex. 1-2. Even assuming the truth of the content of the purported expert report, the fact that such after-produced report may contain evidence upon which Addison's innocence of the Misconduct could have been argued before the Hearing Examiner does not change whether the Department was duty-bound to provide Addison with an expert report in the first instance in consideration of the institutional goals and time considerations discussed *supra*.

[4] The Sixth Amendment to the Constitution of the United States provides criminal defendants with the following guarantees:

proceedings but is not applicable to prison disciplinary hearings. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *see also Horan v. Wetzel* (Pa. Cmwlth., No. 1425 C.D. 2013, filed May 28, 2014), slip op. at 9. Thus, this aspect of Addison's Sixth Amendment claim also fails.

Moreover, we agree that Addison's retaliation claim should be dismissed because the Misconduct was issued pursuant to a prison rule prohibiting threats and inappropriate language to or about an employee. *See* Department's Br. at 4-7; *see also* Commonwealth of Pennsylvania, Department of Corrections Misconduct Report No. D314112, attached to the Petition at Ex-5; Department of Corrections Form DC-135A Inmate's Request to Staff Member dated February 9, 2021, attached to Petition at Ex.-4. In prisoner retaliation claims, "courts require proof the inmate engaged in constitutionally protected conduct, prison officials took adverse action, and the protected conduct was a substantial or motivating factor for the action." *Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1120 (Pa. 2009). In addition to these basic elements, to prevail on a retaliation claim, a prisoner also maintains the burden of proof to disprove a legitimate penological goal for the alleged retaliatory action. *Id.* The reason for this requirement stems from the

---

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

8

"potential for abuse" inherent in retaliation claims and also a policy of judicial deference to the prison officials' "legitimate interest in the effective management of a detention facility." *Id.* at 1120-21. "[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Horan v. Newingham* (Pa. Cmwlth., No. 2622 C.D. 2015, filed Oct. 24, 2016), slip op. at 5 (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). "Thus, a defendant may successfully defend a retaliatory discipline claim by showing *some evidence* the inmate actually committed a rule violation." *Id.* (quoting *Hartsfield*, 511 F.3d at 829) (emphasis added). Further, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation[.]" *Id.*

In the instant matter, the Misconduct alleged violations of prison Rule 15, Threatening an Employee, and Rule 33, Using Abusive, Obscene or Inappropriate Language to or About an Employee. *See* Commonwealth of Pennsylvania, Department of Corrections Misconduct Report No. D314112 (Misconduct Report), attached to the Petition at Ex-5. The Misconduct Report referred to the Retaliation Complaint allegedly signed by Addison that stated:

> I had a hearing yesterday and Ms. Murray up [sic] my level from a 2 to a 3. You are trying to retaliate against me. I will show you and this staff member[] [h]ow to retaliate if you fuck up my freedom. I am not the person who need to be fuck [sic] with. [I]t is best that I be removed from this unit [b]efore it be [sic] a problem. I am tired of you, Ms. Murray, [a]nd this C.O. fucking with me and my freedom. You are looking for problem [sic] everyday [a]nd trying to retaliate. I will [r]etaliate against [a]nyone for my freedom. I don't care no more [sic]."

9

Retaliation Complaint, attached to Petition at Ex.-4. The Retaliation Complaint represents some evidence that Addison actually committed a rule violation upon which a prison disciplinary violation could be based. Accordingly, as this Misconduct was issued for alleged violations of prison rules, Addison's retaliation claim fails. *See Newingham*.

Addison's remaining requests – that this Court transfer him to a medical facility and investigate a prisoner grievance in which he claims that a member of the prison psychology staff breached a duty of confidentiality in relation to him – raise claims not before the Court and upon which relief cannot be granted.

First, Addison's requested review of Grievance No. 914328, which seeks review of a grievance in which Addison alleges harassment by a member of the Department's psychology staff, appears unrelated to the Misconduct underlying the instant matter and is therefore not properly before or reviewable by the Court. *See* Petition at 3. Further, Addison must prosecute this unrelated grievance through the Department's internal grievance and appeal procedure, which, as discussed *supra*, provides constitutionally adequate and meaningful legal remedies to inmates not subject to review by this Court. *See Bronson*, 721 A.2d at 358-59; *Silo*, 728 A.2d at 399.

To the extent Addison seeks transfer to a medical facility, he effectively makes a specific mandamus request[5] that also appears completely unrelated to the

---

[5] As this Court has explained:

> Mandamus is an extraordinary remedy that compels the official performance of a ministerial act or a mandatory duty. [This Court] may issue a writ of mandamus only where[] (1) the petitioner has a clear legal right to enforce the performance of an act, (2) the [respondent] has a corresponding duty to perform the act[,] and (3) the petitioner has no other adequate or appropriate remedy.

10

request that the Department furnish an expert witness for Addison in the Misconduct that underlies this matter.  *See* Petition at 3.  While we acknowledge that deliberate indifference to serious prisoner medical needs by prison officials can present a valid claim for the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment of the United States Constitution, and that such indifference may be manifested by the intentional denial or delay of access to prescribed medical care by prison officials,[6] the Petition fails to plead facts adequate to state such a claim.  The Petition notes Addison's medical condition and necessary treatment but makes no allegation that he has been denied such treatment through the deliberate indifference of Department officials or has been caused unnecessary pain as a result.  *See* Petition at 3.  Accordingly, this claim, if reviewable, would be properly dismissed.[7]

For the foregoing reasons, we sustain the Preliminary Objections and dismiss the Petition with prejudice.

---

*Kretchmar v. Dep't of Corr.*, 831 A.2d 793, 798 (Pa. Cmwlth. 2003) (internal citations and quotation marks omitted).  Further, the Court has noted that mandamus "will not lie to control the exercise of discretion unless the [respondent's] action is so arbitrary as to be no exercise of discretion at all." *Id.*

[6] *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); U.S. Const. amend. VIII.

[7] We further note that, under Department regulations, "[a]n inmate does not have a right to be housed in a particular facility[.]"  37 Pa. Code § 93.11(a).  As this Court has explained:

> "It is entirely a matter of [the Department's] discretion where to house an inmate." *Clark v. Beard,* 918 A.2d 155, 160 (Pa. Cmwlth. 2007).  "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile,* 536 U.S. 24, 39 [] (2002).  Under [the Department's] regulations, "an inmate does not have a right to be housed in a particular facility or in a particular area within a facility."  37 Pa. Code § 37.11.

*Lopez v. Pa. Dep't of Corr.*, 119 A.3d 1081, 1085 (Pa. Cmwlth. 2015), *aff'd sub nom. Lopez v. Wetzel*, 144 A.3d 92 (Pa. 2016).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
                          :
        v. :
                          :
Raymel Addison, : No. 174 M.D. 2021
            Petitioner :

PER CURIAM

O R D E R

AND NOW, this 13th day of January, 2023, the "Preliminary Objections to the Petition for Review" filed by the Commonwealth of Pennsylvania, Department of Corrections are SUSTAINED and *pro se* petitioner Raymel Addison's "Motion to Be Exonerated From Misconduct Number #D314112" is DISMISSED with prejudice.